# WHEELING

## REYNOLDS v. TOMPKINS.

Submitted June 29, 1883—Decided December 15, 1883.

| | |
|---|---|
| 23 | 229 |
| 37 | 47 |
| 23 | 229 |
| 39 | 106 |
| 39 | 420 |
| 23 | 229 |
| 40 | 724 |
| 23 | 229 |
| 44 | 574 |
| 45 | 703 |
| 23 | 229 |
| e55 | 147 |
| 55 | 253 |
| 55 | 339 |
| 23 | 229 |
| 58 | 20 |
| 23 | 229 |
| 61 | 13 |
| 61 | 244 |
| 23 | 229 |
| 64 | 213 |
| 64 | 300 |
| 64 | 423 |
| 165 | 407 |

1. If an agent with authority to sell, upon a certain commission, in the event of a sale, procures a purchaser at the price and on the terms authorized, who would have taken the property at the price, and the owner of the property steps in, ignores the agent, and sells to the purchaser so secured, at the same price and on the same terms, or for a less price, and on the terms proposed to the purchaser by the agent, even if they were different from the terms stipulated in the authority to sell, the owner is liable to pay to the agent the amount of commission stipulated to be paid. (p. 235.)

2. If the owner has several agents appointed to sell the same land, and one of them finds a purchaser, and negotiates with him to sell the land at a certain stipulated price and on terms differing from those specified in the authority to sell, and when the sale is about to be consummated, another agent of the owner meets the same person, who talks to him about the offer of the first agent, and with full knowledge of the negotiations of the first agent, the second agent sells the same property to such person for a less price, but on the same terms as to cash down and time in which to pay the deferred payments, and the owner is ignorant of the negotiations of the first agent with the purchaser, but ratifies the sale by the second agent, made on the terms proposed by the first, he is not liable to the second but to the first agent and should pay him a reasonable compensation for procuring said sale. (p. 235.)

3. Affidavits of the jurors as to how they *understood* the instructions of the court, and that in accordance with such *understanding* the verdict was rendered, will not be read on a motion to set aside a verdict. (p. 236.)

4. The court below may grant a new trial, when the evidence is contradictory, and the verdict is against the weight of evidence, but in such a case the power of the court to grant a new trial should be cautiously exercised ; and when in such case the court below grants a new trial, its opinion is entitled to peculiar respect, and the Appellate Court will not reverse such order unless it is plainly wrong. (p. 237.)

5. A stronger case should be made to justify an Appellate Court in reversing an order *granting* than one *refusing* a new trial. (p. 237.)

The facts of the case are stated in the opinion.

*S. A. Miller* and *T. B. Knight* for plaintiff in error.

*William H. Hogeman* for defendant in error.

JOHNSON, PRESIDENT:

In April, 1875, H. W. Reynolds brought his action of trespass on the case in *assumpsit* in the circuit court of Kanawha county against William H. Tompkins. The declaration contains the common counts and two special counts on a special contract to give plaintiff certain compensation for selling a tract of land in said county for the defendant. The special counts alleged, that plaintiff did find a purchaser, one Bowers, through Hoffman an agent for said Bowers, "that said Hoffman agent for said Bowers had become willing to pay for the said land the sum of thirty dollars per acre as aforesaid upon the terms aforesaid, the said defendant heretofore, to-wit, on the 15th day of October, 1873, sold and conveyed the tract of land to the said Bowers for the sum of twenty-five dollars per acre, although the said defendant well knew the fact, that the plaintiff had made the negotiations aforesaid with the said Hoffman as agent for the purchase of said land under the written authority aforesaid of said defendant; and that said Hoffman as agent for the said Bowers was then examining the lands aforesaid at the instance of the plaintiff with a view of purchasing the same. And the said plaintiff also avers, that the sale aforesaid, so made as aforesaid, was made and consummated by reason and in consequence of the action of the said plaintiff in inducing the said Hoffman as agent for said Bowers to examine said land with a view of purchasing the same; and that said sale was made without the knowledge of the said plaintiff; and that by reason of and in consequence of the action aforesaid of the said defendant the said plaintiff was prevented from selling the land to the said Bowers through his said agent Hoffman or to any other person, or persons; and the plaintiff avers, that by reason of the promises and especially by reason of the action of the defendant as aforesaid the said defendant became liable to the plaintiff for a large sum of money, to-wit, the sum of nine thousand dollars."

The contract declared on in both special counts is as follows: " I propose to sell about one thousand four hundred acres of the one thousand six hundred and seventy-five tract on the map I send. I reserve about three hundred acres lying above the Mile branch and back of H. P. Tompkins. Title perfect, and will be transfered by deed clear of all incumbrance. Two veins now open—the Coalburg vein and one now operated by H. P. Tompkins. Quality of both veins No. 1. Land well timbered. I will take twenty-five dollars per acre for above lands—one half cash, balance in one and two years, with six per cent. interest, and lien retained to secure deferred payments. Will give you all you can get above twenty-five dollars for the lands, and in the event you can only get twenty-five dollars, will pay you two thousand dollars commission. This is not an option but only a privilege of selling. Do your best and at once. I am told L. B. Lent the circus man proposes to invest in coal lands; try him. I am sure he can get no more desireable lands than mine.

" Yours truly,<br>" WM. H. TOMPKINS."

There is but little difference in the two special counts.

The defendant demurred generally to the declaration and each count, which demurrer the court overruled. The defendant then pleaded *non-assumpsit*; and on the 3d day of December, 1877, the issue was tried by a jury, and on the 7th of the said month a verdict was rendered "for the defendant." On the seventeenth day of December, 1877, on motion of the plaintiff and for reasons appearing to the court the verdict of the jury was set aside and a new trial awarded, to which the plaintiff excepted, and the court in a bill of exceptions certified all the evidence together with the instructions given and exceptions taken to certain instructions given for defendant.

Under the statute authorizing a writ of errror in such case, without waiting for the new trial to be had, the plaintiff brought the case to this Court for review.

There was evidence tending to show, that the plaintiff had about completed the sale of the land to Hoffman upon different terms from those specified in the letter of defendant

to plaintiff, to-wit, one *fourth cash* and the balance in *one, two* and *three* years. There was evidence also tending to show, that the defendant through his brother had sold the same land to Hoffman at the lowest price, at which Reynolds was authorized to sell it, on the precise terms, upon which Reynolds was about to sell it, and that Reynolds had been prevented from making the sale through the the unauthorized interference of the defendant or his brother; and further, that after the sale the defendant had told plaintiff, that the sale should not deprive him of his two thousand dollars. The court at the instance of the defendant and against the objections of plaintiff gave the four following instructions:

"1. If the jury believe from the evidence that the only authority the plaintiff had to sell the defendant's land mentioned in the declaration was a privilege given to him by the defendant in writing, to sell said land for one half the purchase-money in cash, and the balance in one and two years, with six *per cent.* interest, and a lien retained to secure the deferred payments, and that the only attempt made by the plaintiff to sell said land, was to one person, for one fourth the purchase-money in cash and the balance in three equal instalments then the jury must find for the defendant.

"3. An action cannot be maintained upon a proposition to make a contract, by the party to whom the proposition is made, unless such party proves to the satisfaction of the jury, that he accepted the proposition so made, and complied with the terms and conditions thereof.

"4. If the jury believe from the evidence that the plaintiff never sold the land mentioned in the written proposition made to him by the defendant read in evidence or never found a purchaser, ready and willing to buy said land upon the terms and conditions specified in said proposition, then they must find for the defendant.

"8. If the jury believe that the defendant, William H. Tompkins, had given the privilege of selling the lands, in question to both the plaintiff and to H. P. Tompkins, and to others, and that such authority to each was antecedent to any negotiations, commenced in this transaction, and that each and all said agents, had equal and like authority to sell the same, with no exclusive privilege to any one of such persons,

and that the sale was in fact not consummated by said plaintiff, but by said II. P. Tompkins, and without any interference on the part of, or any act done by the defendant, William H. Tompkins, then the jury must find for the defendant on the special counts in the declaration.".

Do, these instructions correctly state the law?

Story in his work on Agency sec. 329 says: "The general rule of law as to commissions undoubtedly. is, that the whole service or duty must be performed, before the right to any commission attaches, either ordinary or extraordinary; for an agent must complete the thing required of him, before he is entitled to charge for it. But cases may occur in which an agent may be entitled, to a remuneration for his services, in proportion to what he has done, although he has not done the whole service, or duty originally required. This may arise either from the known usage of the particular business or from the entire performance being prevented by the act or neglect of the principal himself; or from the intervention of an overwhelming calamity, or irresistible force, which has rendered it impossible."

In *Redfield* v. *Tegg*, 38 N. Y. 212, it was held, that a real estate broker is entitled to his usual commission for a successful negotiation of the *exchange* of property put in his hands for *sale*. He is not bound to effect a sale upon the terms named by the owner, when he leaves the property with him, in order to be entitled to his commission. The terms of sale or exchange being accepted by the owner and secured through the aid of the broker, the obligation to pay commission becomes fixed.

In *Briggs* v. *Boyd*, 56 N. Y. 294, the court says: "The owner does not agree that he will not during the time sell the property himself, or through the agency of another broker; and yet it is settled, that if the owner while the broker is treating for the sale of the property, interferes and makes a bargain himself with the same person for the sale, upon the terms prescribed for the broker, or any other, he is liable for the commission."

In *Reed's Ex'or's* v. *Reed*, 82 Pa. St. 420, it was held, that where an owner offered to pay a broker a certain sum to obtain a purchaser for his property, and the broker procured

parties to enter into negotiations for the purchase, and pending these negotiations the owner allowed the parties five or six weeks time to decide, upon terms made by him in answer to theirs, a contract relation was created, which was violated by a sale by the owner to third parties, within the time allowed, and the broker was entitled to recover the stipulated compensation. Mr. Justice Woodward for the court said: "If the plaintiff acted upon the proposition made to him in July, 1870, and procured parties to enter into a negotiation for the purchase of the canal, and while this was pending five or six weeks were allowed to these parties to decide, upon the offer of terms General Reed had made, in answer to that which they had presented, a contract relation was created, which was violated by the sale to Scott within the time allowed. It is true that the agreement for the extension of time was without any condition to support a contract, which the parties preparing to purchase could arrest. But the rights of the plaintiff stood on different grounds. He had rendered service in view of the inducement which had been offered him by General Reed, and when the sale to Scott made it impossible, to carry the original agreement into effect, he became entitled to the stipulated compensation." In *Edwards* v. *Goldsmith*, 4 Harris 43, where a broker was to receive a definite commission for procuring a purchaser for certain lots of ground, and complied with his part of the contract, but the defendant without good reason, failed to comply on his part, it was held that the broker could recover in *indebetatus assmpsit*, the amount of compensation agreed upon. And in *Keys* v. *Johnson*, 18 P. F. Smith 42, it was decided that when a broker authorized to sell at private sale has commenced a negotiation, the owner cannot, pending the negotiation take it into his own hands and complete it, either at or below the price limited, and then refuse to pay the commission."

In *Kock* v. *Emmerling*, 22 How. 69, it was held, that where an agent was employed to sell an estate in Louisiana, and the owner refused without sufficient reason to fulfill an agreement, which the agent had made, a right to demand compensation accrued to the agent, the amount of which is to be settled by established usage.

If an agent with authority to sell on a certain commission, in the event of a sale procures a purchaser at the price and on the terms authorized, who would have taken the property at the price, and the owner of the property steps in, ignores the agent and sells to the purchaser so secured, at the same price and on the same terms, or for a less price, and on the terms proposed to the purchaser by the agent, even if they were different from the terms stipulated in the authority to sell, the owner is liable to pay to the agent the amount of commission stipulated to be paid. He will not be permitted to take advantage of the negotiations made with the purchaser by the agent, and then escape the liability to pay him the stipulated compensation.

If he has several agents employed to sell the same land, and one has found a purchaser and has negotiated with him to sell the land at a certain stipulated price and on certain terms, different from those specified in the authority to sell, and when the sale was about to be consummated, another agent of the owner meets the same person, who talks to him about the offer of the first agent and with full knowledge of the negotiations of the first agent, the second agent sells to such person the same property for a less price, but on the same terms as to cash down and time in which to pay the deferred payments, and the owner is ignorant of the negotiations of the first agent with the purchaser, but ratifies the sale by the second agent made on the terms proposed by the first, he is not liable to the second but to the first agent, and should pay him a reasonable compensation for procuring said sale.

The said four instructions clearly violate these principles and should not have been given; and the court for this reason did not err in setting aside said verdict.

The plaintiff procured the affidavits of all the jurors, that they did not find for the plaintiff, "simply and solely because they understood the instructions of the court to forbid any finding for the plaintiff, unless they were satisfied, that the plaintiff had closed an arrangement with Hoffman for a sale of defendant's lands on the precise terms stated in the written proposition in evidence before them, and but for their understanding of the instructions of the court they would not have agreed to the verdict returned in the case."

Such a practice as this can receive no countenance by this Court. The general rule is, that jurors must not be permitted to impeach their own verdict. If the instructions were erroneous, that is sufficient to set aside the verdict; and jurors cannot be permitted by affidavit to show *how* they *understood* the instructions of the court.

In a case like this, where the evidence is so conflicting, we would not undertake to say, that the court erred in setting aside a verdict. If the instructions had been correct, and the court had approved the verdict and refused to set it aside, we would not in a case like this disturb the verdict. We reiterate what we said in *Miller* v. *Insurance Co.*, 12 W. Va. 116. The court below may grant a new trial, where the evidence is contradictory, and the verdict is against the weight of evidence; but in such a case the power of the court to grant a new trial should be cautiously exercised. And when in such case the court below grants a new trial, its opinion is entitled to peculiar respect, and the Appellate Court will not reverse such order, unless it was plainly wrong. A stronger case should be made to justify an Appellate Court in reversing an order, *granting than one refusing* a new trial.

There is no error in the judgment of the circuit court and it is therefore affirmed.

AFFIRMED.