# WHEELING.

## PROBST *v.* BRAEUNLICH.

Submitted June 13, 1884—Decided June 28, 1884.

1. It is settled in this State as a general rule with but few if any exceptions, that the testimony of jurors will not be received to *impeach* their verdict. (p. 358.)

2. When the bill of exceptions sets out the specific grounds on which the court sets aside the verdict of the jury, this Court will presume, unless the contrary appears, that it acted on those grounds alone and, if those grounds are clearly insufficient, this Court will reverse the order setting aside the verdict; but, generally, it takes a stronger case to reverse an order granting than it does one refusing a new trial. (p. 361.)

3. A case in which it was held that the circuit court erroneously set aside the verdict of the jury on the affidavit of seven of the jurors who tried the case.

The facts of the case are stated in the opinion of the Court.

*J. W. McCoy* and *T. J. P. Jacobs* for plaintiff in error.

*McEldowney & Wiley* for defendants in error.

SNYDER, JUDGE:

This is a writ of error to an order of the circuit court of Wetzel county allowed on the petition of the plaintiff in an action of *assumpsit* brought by Theophile Probst against Charles F. Braeunlich and Amos Brast, partners, &c. A trial was held by jury and a verdict returned for the plaintiff for one hundred and ninety-four dollars and seventy-four cents, which on the motion of the defendants was set aside and a new trial awarded. The defendants filed in support of their motion to set aside the verdict because it was contrary to the law and the evidence, the joint affidavit of seven of the jurors who tried the case. None of the facts or evidence appear in the record and it is, therefore, claimed by the defendants in error that this Court cannot review the action of the circuit court.

It is unquestionably true that every presumption is in favor of the correctness of the action of the inferior court and that this Court will not reverse such action unless the record affirmatively shows error to the prejudice of the plaintiff in error. *Shrewsbury* v. *Miller*, 10 W. Va. 115; *Miller* v. *Rose*, 21 *Id.* 291.

The bill of exceptions, to which alone we can look to ascertain the grounds on which the court below founded its action, states that, "after argument of counsel the court sustained said motion *and for the reasons set forth in said affidavit*

set aside said verdict and granted the defendants a new trial." This, it seems to me, plainly shows that the court acted upon the said affidavit and nothing else. It expressly declares that the court "for the reasons set forth in said affidavit set aside said verdict." This language is so positive and explicit that it leaves no room for inference or implication. We must, therefore, presume that the court was satisfied with the verdict and did not set it aside because it was contrary to the evidence, but that it acted solely upon said affidavit and the grounds therein set forth. Such being the fact, the questions to be determined by this Court are :

First—Did the circuit court err in considering said affidavit; and

Second—If not, did "the reasons set forth in said affidavit" warrant the setting aside the verdict?

1. Whether the testimony of jurors is admissible to impeach their verdict, is a question upon which the authorities were formerly unsettled and in some respects conflicting. In Virginia the practice was for a long time unsettled. In a few cases of evident mistake, like *Cochran* v. *Street*, 1 Wash. 79, the testimony of jurors was received and the verdict set aside; but the great preponderance of authority has always been against allowing jurors to impeach their verdict; the courts even in cases where it was admitted, under peculiar circumstances, always using such language as Mansfield employed in *Vaise* v *Deleval*, 1 T. R. 11, that "to meddle with the verdict of the jury upon the evidence of some of the jurors, is a delicate business and should be proceeded in with caution, to prevent the mischief of jurors being tampered with." Judge Moncure, in delivering the opinion of the court in *Bull's Case*, after a very full and able review of both the English and American authorities on the subject, concludes, "In view of all the authorities, and of the reasons on which the same are founded, we think that, as a general rule, the testimony of jurors ought not to be received to impeach their verdict, especially on the ground of their own misconduct. And without intending to decide that there are no exceptions to the rule, we think that even in cases in which the testimony may be admissible, it ought to be received with great caution. A contrary rule would hold out to unsuccessful

parties and their friends, the strongest temptation to tamper with jurors after their discharge, and would otherwise be productive of great evils. A corrupt juror, wishing to favor one of the parties, might propose to decide the case by lot, knowing that he could have the verdict set aside if it did not suit him; or, wishing to insure the discharge of a prisoner tried for felony, might refuse to concur with the other jurors in finding a true verdict of guilty, unless they would unite with him in a petition for pardon, believing that he could have the verdict set aside if the pardon were refused. In almost every case, especially every felony case in which the jury is kept together for several days, a plausible ground might be shown for setting aside the verdict; upon the sufficiency of which the court would have to decide according to its own discretion. Thus the value of jury trial would be greatly impaired, and the whole administration of justice dependent upon it would be involved in the most painful uncertainty. A juror who comes forward to impeach his verdict on the ground of his own misconduct has little or no claim to our credit; and the safest rule is to shut the door against him. * * * * The verdict is surely the best evidence of his opinion of the case; and he, at least, should not be permitted, as a general rule to impeach it." 14 Gratt. 632. This language is quoted and approved in *Howard* v. *McCall*, and the court then says that, "it may now be considered as well settled, as a general rule, that the testimony of jurors ought not to be received to impeach their verdict." 21 Gratt. 212. To the same effect is *Read's Case*, 22 *Id.* 925, 947.

Prof. Minor, in his Institutes, part 1 vol. 1 p. 844, says: "Proof, by the jurors themselves, of misbehavior, or of motives which influenced the jury, or any of them, has always been received with the greatest caution (*Cochran* v. *Street*, 1 Wash. 80); and the sentiment in opposition has grown progressively stronger, until in general it has come to be established doctrine that jurors are inadmissible for the purpose in question. Such is the apprehension of opening a door to tampering with them, that it is deemed more prudent, upon the whole, to permit even gross irregularities to pass unchallenged rather than to allow any inquiry to be propounded to the

jurors touching the conduct of the jury, and especially touching the *motives and reasons* which influenced their judgment"—citing, 3 Gra. & Wat. New Trials 1428, 1450; *Thompson's Case*, 8 Gratt. 641, 650; *Bull's Case*, 14 *Id.* 613; *Read's Case*, 22 *Id.* 947; *Steptoe* v. *Flood*, 31 *Id.* 344; *Danville Bank* v. *Waddill*, *Id.* 483; *Thomas* v. *Jones*, 28 *Id.* 387; *Shobe* v. *Bell*, 1 Rand. 39.

This Court, upon a review of the Virginia decisions, in *State* v. *Cartright*, after stating that, "both reason and the theory of criminal proceedings in this country would seem to require, that the testimony of jurors should not be admitted either to impeach or to support their verdict (20 W. Va. 42), held in deference to the Virginia authorities, that, while the testimony of jurors may be received in *support* of their verdict, it ought to be received with very great caution and even then the jurors should be allowed to state only such *facts and circumstances* as are within their own knowledge tending to explain their conduct, or to remove a presumption of the invalidity of the verdict, which may have been raised against it by their conduct; "but such testimony should not be received to show by what *motives* they were actuated or that any admitted fact, misconduct or irregularity had no *influence or effect* in producing the verdict"—20 W. Va. 33.

The rule thus indicated was approved and applied in the case of the *State* v. *Robinson*, 20 W. Va. 713; see *Reynolds* v. *Tompkins*, 23 W. Va. 229.

Thus it appears that the rule is more limited and restricted by the decisions of this Court than it was by the Virginia court of appeals. It may be, therefore, regarded as settled in this State that, as a general rule, with but few, if any, exceptions, the testimony of jurors will not be received to *impeach* their verdict. From this conclusion it follows, that the circuit court erred in receiving and considering the affidavit of the jurors on the motion to set aside the verdict in this case, unless the facts stated in the affidavit and the circumstances are of such strong and peculiar character as to except this case from the operation of the general rule.

2. Omitting the descriptive portions of said affidavit it is as follows: The said jurors say that, "we inferred from the trial of said cause that the defendants received the oxen and

mule charged for in the defendants' account, and that the plaintiff has not and would not get the said oxen and mule or any value for them, and in that view, we struck the charge for the said mule and oxen out of defendants' account, and allowed them nothing for said mule and oxen. And further, it was unanimously agreed by said jury that no amount was allowed either plaintiff or defendant as damages, and that the plaintiff was allowed two dollars and twenty-five cents per thousand feet for hauling the logs contracted to be hauled and hauled under the contract between the parties to the said suit."

To justify the court in setting aside the verdict, the facts on which it acted should show distinctly that the verdict was plainly erroneous or that palpable injustice had been done. The court is not authorized to interfere with the verdict of a jury fairly rendered upon a mere conjecture or belief that injustice may, in its opinion, have been done. All intendments and presumptions are in favor of the verdict, and the court in setting it aside must act on facts brought to its attention. It must affirmatively appear to the trial-court that the verdict was either plainly contrary to the law or the evidence, or that it was palpable unjust for some other manifest reason. When the bill of exceptions sets out the grounds and reasons on which the trial-court acted, as it does in this case, this Court will reverse the judgment, if those grounds and reasons appear to be clearly insufficient, although generally it takes a stronger case to reverse an order granting than it does one refusing a new trial—*Miller* v. *Ins. Co.*, 12 W. Va. 116; *Black* v. *Thomas*, 21 *Id.* 709.

Taking this affidavit as the sole ground for granting the new trial in this case, as we must do from the bill of exceptions, it was clearly insufficient. Whether the inference, of which the jurors speak, in regard to the mule and oxen, was in support or in conflict with the evidence on which they found their verdict, does not appear. It may have been a matter altogether immaterial. But however this may be, the character of the facts set forth in the affidavit are not such as to take it out of the general rule, and I am, therefore, very clearly of opinion that in this case the court erred in receiving or considering this affidavit. For this error the order

granting the new trial must be reversed with costs, and a judgment entered on the verdict for the plaintiff by this Court with costs in the circuit court.

REVERSED.