# CHARLESTON

HENDERSON v. HAZLETT *et als.*

Submitted October 27, 1914. Decided December 8, 1914.

1. NEW TRIAL—*Grounds*—"*Surprise.*"

   To entitle a party to a new trial based on surprise he must show himself to have been diligent at every stage of the proceedings. Surprise calling for favorable action on his motion is that situation in which he is unexpectedly placed, without any fault on his part, and which will work injury to his interests. (p. 258).

2. SAME.

Generally it is no ground for a new trial that the movant was surprised at the testimony of his adversary or of other witnesses, who had not misled him by previous statements inconsistent therewith, and where there is no evidence of trickery or of tampering with the witnesses. (p. 258).

3. SAME—*Grounds—Failure to Procure—Advice of Counsel.*

That the movant failed to summon material witnesses or produce material evidence on the trial, on the advice of counsel that the same was unnecessary, is not ground for setting aside a verdict and awarding a new trial. (p. 261).

4. APPEAL AND ERROR—*Discretionary Ruling—Ground for New Trial.*

In a clear case of abuse of discretion in setting aside a verdict and awarding a new trial, this court will reverse the judgment of the lower court and correct the error. (p. 262).

5. NEW TRIAL—*Right to Grant—Opinion of Judge.*

A trial court is not authorized to interfere with the verdict of a jury, fairly rendered, upon mere conjecture, or belief, that injustice may, in its opinion, have been done. It must affirmatively appear that the verdict was either plainly contrary to the law or the evidence, or that it was palpably unjust for some other manifest reason. (p. 262).

Error to Circuit Court, Marshall County.

Action by H. E. Henderson against John Hazlett and others. Judgment awarding plaintiff new trial, and defendants bring error.

*Reversed and Rendered.*

*Martin Brown* and *C. E. Carrigan,* for plaintiffs in error.

*D. B. Evans,* for defendant in error.

MILLER, PRESIDENT:

This is a writ of error to the judgment below setting aside the verdict of the jury in favor of defendants and awarding plaintiff a new trial.

Plaintiff sued in detinue to recover the possession of "Gay Lad", described in the writ, "a dark bay stallion, Register No. 47879 of the value of Twelve Hundred and Fifty (1250) Dollars, and Damages $500.00 for the detention thereof."

The defense was "non detinet". In his opening statement to the jury plaintiff's counsel said, in substance, that he

understood the only question which they would be called on to try would be the amount of the damages, for as he understood, plaintiff's title to the horse sued for was conceded. In reply, defendants' counsel stated that he would undertake to show that the horse in defendants' possession was not the horse sued for, but another and different horse, and that defendants would claim right to possession of the horse until they were supplied with another horse, agreeably to the contract with Bullock, from whom they had purchased a horse.

On the trial the evidence showed that plaintiff, in April, 1907, had purchased from one W. B. Bullock, the horse described in the declaration, and that in November, 1907, he had put this horse back into Bullock's possession, he being a dealer, to be sold for his account. The evidence also showed that on May 10, 1907, defendants had also purchased a horse from Bullock, by contract in writing and with a collateral contract of insurance providing that if said stallion should die at any time within three years from the date of sale, Bullock would replace him with another horse. It was proven also that the horse so sold defendants did die within a short time thereafter and within the three years provided in the insurance contract, and that on demand, by defendants, that Bullock should comply with his said contract to replace the dead horse with another one, and not being then prepared to furnish a horse satisfactory to them, he had, on June 22, 1908, delivered into their possession a horse, under an agreement in writing providing that defendants might use him for the purpose of breeding mares for that season, and thereafter to deliver him back to Bullock at any time he might notify them to do so, and that Bullock would "furnish them with another horse" in accordance with his contract of insurance when he should get his new horses in.

To prove title to and the identity of the horse alleged to be in the possession of and unlawfully detained by defendants, plaintiff swore that his horse was named Gay Lad, register No. 47879, and was of the value of twelve hundred and fifty dollars, and so described in the declaration. And by way of further identification he further testified that his horse was a dark bay horse, past two years old, two years and a half old,

with a star on his face and one white hind foot, he could not say which hind foot, the white extending up over the pastern joint, part of it including the second joint, white all around to the best of his memory, and higher up in some places than in others; that he was cleaner limbed, no blemishes on him; he did not have the registration papers with him at the trial, left them with the horse, in Bullock's possession; that he had had possession of the horse in Pennsylvania, from April 6, 1907, to Nov. 2, 1907, when he had turned him over to Bullock at Moundsville, West Virginia, for sale.

Defendants then introduced their co-defendant Hazlett, and proved by him that Henderson claimed the horse they had in August, 1909, but says, if Henderson correctly described his horse, they did not have him, that the horse in their possession, while answering the description of a dark bay, and weighing eighteen hundred pounds, and having one white hind foot, and a white star in his face, also has a white stripe on his nose, a white front foot or a white stripe running up one of his front feet, is high headed, and stylish, and also has bogs on both hind knees, and a knot or lump on his left jaw bone, and had these blemishes ever since he first saw him. Defendants also proved, by their co-defendants Merinar and Davis, that the horse in their possession they saw in Bullock's possession in Moundsville, West Virginia, on May 11, 1907, and they also described the horse in the same way as described by Hazlett, and the particulars in which he differed from the horse described by plaintiff. This was substantially all the evidence on the question of the identity of the horse sued for with the one in the possession of defendants. Plaintiff was not recalled after the defendants had testified, nor was any other witness called to enlarge the description of the horse, or to further prove the identity of the horse sued for with the horse detained by defendants, and as thus presented the case was submitted to the jury, with the result already indicated.

After the verdict a motion by plaintiff for a new trial, based on surprise at the evidence of defendants and his alleged reliance on the representation of defendants and their counsel, as to the ownership of the horse, and admissions as to identity, before trial, supported by their affidavits, but

flatly contradicted by the affidavits of defendants and their counsel, was sustained by the court.   On this motion the judge below was of opinion that there should be a new trial, saying, however, that he was satisfied there was no intention on the part of defendants' counsel to mislead the plaintiff or his counsel, but that it seemed clear that plaintiff had been inadvertently led to believe that it would be unnecessary for him to bring witnesses to prove the identity of the horse in question; that it seemed clear that plaintiff was surprised; as to whose fault it was, if anybody's, he did not know.

Plaintiff admits that before suit was brought he went into the country where defendants had the horses claimed by them and demanded the horse, and though told by his counsel, and as he claimed, by one of the attorneys for defendants, that he could get the horse by going after it, denied by defendants' attorney, and that he was refused possession, and was informed by defendants that counsel had advised them not to surrender the horse, and that because of such refusal he had been obliged to bring suit.   Moreover, in the very opening statement of defendants' counsel to the jury, plaintiff was given notice that defendants denied the title of plaintiff to the horse in their possession, and the identity thereof with the horse sued for.

With all this notice we do not see how plaintiff could have been surprised within the meaning of the law entitling him to a new trial on that ground.   He and his counsel knew or were bound to know that the issue, non detinet, put him on proof of every material fact, showing title and right to possession of the horse; and this seems to have been fully understood, because plaintiff assumed the burden, and undertook by his own evidence to show title and the identity of the horse. The other evidence he proposed in affidavits filed for a new trial, was for the most part but cumulative of his own testimony given on the trial.

Say that plaintiff and his counsel were surprised by the evidence of defendants, this did not furnish ground for a new trial after verdict.   The opening statement of defendants' counsel to the court and jury, that they would show want of identity of the horse sued for with the horse detained by them,

and the evidence of defendants, if a surprise, might have been good ground for a non-suit, or a continuance of the case before verdict, but was it lawfully permitted to plaintiff to submit the case on the evidence, taking the chances of a verdict against him, and afterwards rely on a new trial based on surprise? We do not understand this to be the law of new trials.

We decided in *Walker* v. *May,* 67 W. Va. 316, that to entitle a party to protection against surprise he must be diligent at every stage of the proceedings. He cannot after notice proceed in the absence of witnesses or other evidence to support the issues, and particularly those the burden of which is upon him, and then if he fails, claim the benefit of surprise. In such cases the fact that the evidence of his adversary so outweighs or preponderates against his own, is not the kind of surprise justifying a new trial. When he was advised in the opening statement of defendants' counsel, contrary to the opening statement of his counsel, that the identity of the horse was controverted, and certainly after he had heard the evidence of the witnesses, it was clearly the duty of plaintiff to have made known to the court the fact of his surprise, and applied to the court for a continuance, or have taken a nonsuit. Thereby he would have shown the diligence required, and furnished a basis for favorable action by the court below, and for correction of error therein in this court. Surprise calling for favorable action on a motion for a new trial is that situation in which a party is unexpectedly placed, without any default on his part, and which will work injury to his interests. *Gidionsen* v. *Union Depot Ry. Co.,* 31 S. W. 800, 802; *Zimmerer* v. *Fremont Nat. Bank,* 81 N. W. 849, 850; *Working* v. *Garn,* 47 N. E. 951, 953. In *Tripp Bros.* v. *McCormack,* (Tex.) 157 S. W. 443, it was held, that where defendant's answer clearly indicated his defense and plaintiff did not apply for a continuance in order to procure rebutting testimony he could not rely on surprise as ground for a new trial. *Varney & Evans* v. *Lumber & Mfg. Co.,* 64 W. Va. 417, and *Cole* v. *State,* 73 W. Va. 410, 80 S. E. 487, furnish no precedents to the contrary. Indeed they show the necessity for prompt action at the instant of knowledge or surprise in the proceedings.

According to the affidavits of plaintiff and others, filed in support of his motion for a new trial, the surprise consisted, first, in the character of defendants' witnesses, contradicting that of his own, but clearly within the issues tendered by the plea, and after being warned, not only before suit, but by counsel on the trial; and second, in the fact that his counsel had advised him by letter, before trial, that it would be unnecessary for him to bring witnesses to prove title, or to identify the horse.

As it was stated in 29 Cyc. 866: "Usually it is not ground for a new trial that the movant was surprised at the testimony of his adversary or of other witnesses, who had not misled him by previous statements inconsistent therewith, or at the testimony of an adversary witness called by him, or at the testimony of his own witness, where there is no evidence of trickery or of tampering with the witness." Now while plaintiff's counsel swears in an affidavit that he was told by one of defendants' attorneys that he need not bring witnesses to prove title or identity of the horse, this is flatly contradicted by the affidavit of that attorney; and though plaintiff claimed to have received a letter from his attorney before trial to the same effect, and produced several other letters from him relating to his previous interviews and negotiations with defendants' counsel, he failed to produce the most important letter relating to the evidence required, and he knew personally, after claiming to have received like information from his counsel, that defendants had positively refused him possession of the horse on personal demand made, and that such evidence was necessary. Admittedly he knew the fact of defendants' claim before adducing any of his evidence to the jury.

That plaintiff failed to summon material witnesses or produce material evidence on the trial, on the advice of counsel that the same was unnecessary, is not ground for setting aside a verdict and awarding a new trial. *Pleasants* v. *Clements*, 2 Leigh 474; *Ruffner* v. *Love*, 24 W. Va. 181, 185; *Law* v. *Law*, 2 Grat. 366, Anno. note; *Shrewsbury* v. *Miller*, 10 W. Va. 125.

Nor ought a new trial be granted on the ground of surprise to enable the party against whom the verdict is rendered to impeach the credit of a witness examined at the trial, on the

claim that he swore falsely. *Brugh* v. *Shanks*, 5 Leigh 598. It is no cause for a new trial that the defeated party was surprised by the testimony given by witnesses called by the adverse party. *Bingham* v. *Walk*, (Ind.) 27 N. E. 483.

Though, as several times decided, it takes a stronger case to justify an appellate court in reversing an order granting than one refusing a new trial, *Varney & Evans* v. *Lumber & Mfg. Co., supra*, and cases cited, nevertheless in a clear case of abuse of ·discretion in the trial court, this court will not hesitate to reverse the judgment and to correct the error. *Pleasants* v. *Clements, supra*. The power to grant a new trial should be cautiously exercised. *Reynolds* v. *Tompkins*, 23 W. Va. 229, 236. The case of *Probst* v. *Braeunlich*, 24 W. Va. 356, 361, reversed the judgment below for erroneously awarding a new trial, saying: "To justify the court in setting aside the verdict, the facts on which it acted should show distinctly that the verdict was plainly erroneous or that palpable injustice had been done. The court is not authorized to interfere with the verdict of a jury fairly rendered upon a mere conjecture or belief that injustice may, in its opinion, have been done. All intendments and presumptions are in favor of the verdict, and the court in setting it aside must act on facts brought to its attention. It must affirmatively appear to the trial-court that the verdict was either plainly contrary to the law or the evidence, or that it was palpably unjust for some other manifest reason. When the bill of exceptions sets out the grounds and reasons on which the trial court acted, as it does in this case, this Court will reverse the judgment, if those grounds and reasons appear to be clearly insufficient, although generally it takes a stronger case to reverse an order granting than it does one refusing a new trial. *Miller* v. *Ins. Co.*, 12 W. Va. 116; *Black* v. *Thomas*, 21 *Id.* 709."

We are of opinion on the principles stated and governing in such cases that the court below erred in this case, and that the judgment below should be reversed, and that judgment for defendants should be pronounced on the verdict of the jury.

*Reversed and Rendered.*