C. E. WOODRUFF *v.* JOSEPH A. GILLIAM

(No. 8054)

Submitted January 16, 1935. Decided February 19, 1935.

*Russell, Hiteshew, Adams & Hill, James Kay Thomas, George W. Wood* and *Charles Ritchie,* for plaintiff in error.

*T. C. Townsend, Cyrus H. Gadd, Stanley C. Morris* and *Ben Moore,* for defendant in error.

KENNA, JUDGE:

C. E. Woodruff, the plaintiff, was injured December 23, 1932, while walking along the Midland Trail on Coal Mountain in Putnam County. He was struck by an automobile being driven by Father Joseph A. Gilliam, and, with minor injuries, sustained a fractured skull and a severe injury to his brain. He was at once taken to St. Francis Hospital in Charleston by the defendant. The house surgeon of the St. Francis Hospital, Doctor Haley, promptly had Doctor A. A. Wilson, a specialist in the surgery of the brain and nervous system, called in and placed the patient in his charge. Dr. Wilson testified that he found the patient, when he visited him on the day of the injury, in a state of coma from which it was difficult to arouse him; that his principal injury was a stellate fracture in the front part of his skull (meaning a fracture having several arms running from a point of convergence), and that one arm of the fracture descended downward through a frontal sinus, making a surgical operation inadvisable on account of the danger of infection. Plaintiff continued in the condition of stupor for three or four days and it was two and a half weeks before he was able to correctly answer such simple questions "State your name"; "state your age"; "state where you are", etc. His course in the hospital, the doctor stated, was "characterized by extreme restlessness", so that he had to be restrained by force and given sedatives and sometimes opiates. He was discharged from the hospital on January 19th, and Dr. Wilson continued to see him until the 20th of June. Improvement was rapid during the last few days of his hospital stay and he continued to improve until about six weeks after the accident, when he began to grow worse. Dr. Wilson stated plaintiff had suffered a very definite memory defect which was still present when he last saw him, and that at that time, he was unable to answer such questions as "Where do you live?" without relying upon his wife for information. Dr. Wilson stated that he gave the plaintiff a complete examination the last time he saw him on June 20th, not with reference to his general physical condition, but particularly with reference

to his brain injury, and found that as a result of his injury, he had as ''residuals'', faulty memory and personality change. Dr. Wilson stated that as a result of the injury, plaintiff had bony abnormalities of the skull that he would carry the rest of his life. He further stated that no sound judgment as to the permanence of the result of head injuries he thought could be arrived at in less than five or six months after the injury, and sometimes not then. His last examination was six months after the injury.

Suit was instituted on the 17th day of February, 1933, returnable to March Rules, and at April Rules, the declaration was filed, and the case matured and set for hearing July 13, 1933. On July 13th, a postponement was consented to by both parties and on August 25, 1933, the court re-set its docket for the term. At this time, the plaintiff's counsel moved for a continuance on the ground that the plaintiff himself had disappeared, and that his counsel did not know his whereabouts. This motion was opposed by defendant's counsel who pressed for trial in order to force plaintiff to take a voluntary non-suit. The court overruled the plaintiff's motion for continuance and re-set the case for September 5, 1933. On August 25th, Cyrus H. Gadd, counsel for defendant, wrote to plaintiff's counsel that he understood that counsel were to appear in the case again on September 5th, at which time counsel for plaintiff intended to renew their motion to continue the case, and that in the event of their client's return, he would be very glad to renew negotiations looking toward a settlement. On August 29th, counsel for plaintiff replied to this letter, confirming a telephone conversation, and stating that it was their purpose to renew their motion for continuance on September 5th, but that in the event of that motion being overruled by the court, they would expect to go to trial.

It appears that on or about July 10th, the plaintiff and his wife disappeared from their place of residence, and, in spite of the efforts made by plaintiff's counsel, have not since been heard from nor located. On September 5, 1933, counsel on both sides appeared and counsel for the defendant moved for a continuance. Counsel for plaintiff did not renew their mo-

tion for continuance, but asked to be permitted to go to trial and resisted the defendant's motion.

After taking considerable proof, in which the pros and cons of the situation were thoroughly gone into, the trial court set the case for September 12th, and announced that it would be the first case called for trial on that day.

September 12th, the parties appeared again and the defendant, by counsel, again moved that the case be continued, making the motion in writing, and supporting it by the affidavit of Cyrus H. Gadd. The motion in writing sets forth, first, that the defendant has not been able to procure the attendance of a witness without whom it cannot safely proceed to trial, and, second, that he cannot safely proceed to trial without the presence of the plaintiff (a) because he has had no opportunity to call medical experts of the defendant to examine the plaintiff with a view to testifying at the trial, and (b) because the plaintiff's absence deprives defendant of the right of examining plaintiff in the presence of the jury with a view to testing the nature and extent of his injuries. The supporting affidavit states that after the hearing on September 5th, defendant's counsel got in touch with defendant and ascertained that there had been a passenger in the car with the defendant at the time of the accident, and that from the defendant, they procured certain information upon the basis of which they made exhaustive efforts to locate this witness without success, and that the belief of counsel is that if further time were given by a continuance of the case, the witness could be located. The court took a great deal of proof and again went thoroughly into the motion for a continuance, during the course of which it was admitted by the defendant that he, himself, could testify to the same state of facts that the absent witness could testify to. The court thereupon ordered the case to trial, and there was a verdict for the plaintiff in the sum of $10,000.00. This verdict, the court, on motion of the defendant, set aside, and in doing so, handed down a written memorandum of opinion in which it is stated that the court is not impressed by the many assignments of error made on the motion to set aside the verdict; that the proof of negligence on the part of the defendant is believed

to be sufficient to sustain the verdict; that the verdict is not excessive in amount, but that the case was ordered to trial in the absence of the plaintiff, because of the court's belief that the insurance company representing the defendant was implicated in the plaintiff's disappearance. The opinion states that the court, being disabused of that impression, deems it proper to set aside the verdict on account of the absence of the plaintiff. The verdict was thereupon set aside.

The defendant in error assigned several grounds for its motion to set aside the verdict. The order of the trial court itself does not show on what ground the trial court acted in setting the verdict aside. However, the written opinion filed was, in the order that set aside the verdict, specifically referred to and made a part of the record. From the opinion, it appears that the trial court acted favorably upon only one of the grounds assigned as reasons for setting the verdict aside, and that ground was the absence of the plaintiff and the consequent non-compliance with the defendant's demand for a physical examination. The opinion expressly states that negligence had been proven and that the amount of the verdict was not excessive.

The first question to be disposed of is the motion made by the defendant in error to dismiss this writ of error on the ground that the record brought here is not complete and is insufficient to show that other reasons than the one acted upon by the trial court exist for setting aside the verdict.

There is scant authority on the question of whether a written opinion filed in a trial court may be made a part of the record so as to enable the appellate court to look to it to ascertain upon what specific grounds the trial court acted. In the case of *Stover* v. *Stover*, 60 W. Va. 285, 54 S. E. 350, the practice of trial courts filing written opinions was approved and it was held not to be error for the trial court to make such opinion a part of the record in the case. In the *Stover* case, the record included the written opinion of the circuit court of Raleigh County, and that opinion was made a part of the record by specific reference thereto in the order of judgment and by specifically providing therein that it should be a part of the record. That is the case here. We,

therefore, now hold that the written opinion of a trial court may be made a part of the record by a specific reference to the opinion embraced in the order that the opinion accompanies and by specifically providing in that order that it shall be a part of the record. The opinion being a part of the record, it naturally follows that it may be referred to for the purpose of ascertaining upon what grounds the trial court acted in setting aside the verdict.

The plaintiff in error has made a part of his bill of exceptions only so much of the evidence taken in chambers and during the course of the trial as he believes will clearly and fully present the error of the trial court in setting aside the verdict on account of the absence of the plaintiff. The motion to dismiss this writ of error, made by the defendant in error, raises the question that inasmuch as the verdict would have to be set aside in the event *any* ground existed for that motion among those assigned in the trial court, it was the duty of the plaintiff in error to include in his bills of exception and to bring to this Court as a part of the record, all of the evidence necessary to enable this Court to pass upon *all* of the grounds assigned in the trial court for setting aside the verdict, those upon which the trial court did not act favorably as well as the single ground upon which the verdict was set aside. In other words, the defendant in error takes the position that in order to reverse the action of the trial court in setting aside the verdict, the plaintiff in error must bring all of the record here that is necessary to show that the verdict was justified upon every ground assigned by the defendant below as reason for setting it aside. We do not believe that that is the law of this state. In the case of *Sanders* v. *Wise,* 74 W. Va. 797, 83 S. E. 77, L. R. A. 1915B, 353, the trial court had set aside a verdict in favor of a defendant upon the motion of the plaintiff, and the reason for that action assigned in the order was that the court could not find anything in the record as to what the evidence was before the jury. The transcript of the evidence had become lost. Upon writ of error, this court held that it was reversible error to set aside the verdict upon the ground stated, re-instated the verdict and rendered judgment here. This case seems to

demonstrate that the plaintiff in error seeking review of the action of a trial court in setting aside a verdict is not required to bring to this court the entire record in order to demonstrate that there was no reason for setting aside the verdict other than the ground assigned by the court as erroneous, but may invoke the aid of this court upon a record that shows whether or not the trial court was justified in setting the verdict aside upon the single ground that the trial court acted upon. This conclusion seems to be further borne out by the case of *Henderson* v. *Hazlett*, 75 W. Va. 255, 83 S. E. 907. There, there was a motion to set aside the verdict in favor of the defendant on the ground that the plaintiff was surprised by certain testimony adduced at the trial on behalf of the defendant. The trial court acted favorably upon the motion, and the defendant prosecuted a writ of error. In this court, the action of the trial court in setting aside the verdict was reversed, the verdict re-instated, and judgment upon the verdict in favor of the defendant was rendered here. The pertinent part of the opinion is quoted:

> "Though, as several times decided, it takes a stronger case to justify an appellate court in reversing an order granting than one refusing a new trial, *Varney & Evans* v. *Lumber & Mfg. Co., supra*, and cases cited, nevertheless in a clear case of abuse of discretion in the trial court, this court will not hesitate to reverse the judgment and to correct the error. *Pleasants* v. *Clements, supra*. The power to grant a new trial should be cautiously exercised. *Reynolds* v. *Tompkins*, 23 W. Va. 229, 236. The case of *Probst* v. *Braeunlich*, 24 W. Va. 356, 361, reversed the judgment below for erroneously awarding a new trial, saying: 'To justify the court in setting aside the verdict, the facts on which it acted should show distinctly that the verdict was plainly erroneous or that palpable injustice had been done. The court is not authorized to interfere with the verdict of a jury fairly rendered upon a mere conjecture or belief that injustice may, in its opinion, have been done. All intendments and presumptions are in favor of the verdict, and the court in setting it aside must act on facts brought to its attention. It must affirmatively appear to the trial-court that the verdict was either plainly contrary to the law or the evidence,

or that it was palpably unjust for some other manifest reason. *When the bill of exceptions sets out the grounds and reasons on which the trial court acted, as it does in this case, this Court will reverse the judgment, if those grounds and reasons appear to be clearly insufficient, although generally it takes a stronger case to reverse an order granting than it does one refusing a new trial. Miller v. Ins. Co.,* 12 W. Va. 116; *Black v. Thomas,* 21 *Id.* 709.' ''

A question quite similar to the one under discussion was before this Court in *Probst* v. *Braeunlich,* 24 W. Va. 356, and in that case point two of the syllabus is as follows:

"Where the bill of exceptions sets out the specific grounds on which the court sets aside the verdict of the jury, this court will presume, unless the contrary appears, that it acted on those grounds alone, and, if those grounds are clearly insufficient, this Court will reverse the order setting aside the verdict; but, generally, it takes a stronger case to reverse an order granting than it does one refusing a new trial."

We think that it is quite clear that under the statute, the plaintiff in error need bring here as a part of the bills of exception only such part of the evidence at the trial as is necessary to adequately present the questions to be reviewed. Code, 56-6-35, and 56-6-36. Here, since the opinion of the trial court, having been made a part of the record, operated to point out the specific ground on which the trial court acted in setting aside the verdict, and since it was the privilege of the plaintiff in error to bring to this Court only such parts of the record as would enable us to review the action of the trial court upon the specific ground assigned by it for that action, which we are of opinion he has adequately done, it follows that the motion of the defendant in error to dismiss the writ of error because the record brought here is insufficient must be overruled. If the entire record were before us, under well recognized principles, we would be called upon to examine all of the grounds assigned in the trial court for setting aside the verdict, even though most of those grounds were overruled in granting the motion. "Where the entire

record of the proceedings had in the trial court is brought up, an order setting aside the verdict of a jury will be reversed as erroneous, unless sufficient grounds appear in the record justifying such order." *Adams* v. *Adams*, 79 W. Va. 546, Pt. 4, Syllabus, 92 S. E. 463. Inasmuch as that record is not here, it will not be presumed that the trial court erred in overruling certain grounds assigned by the defendant below for the motion to set aside the verdict. The plaintiff in error is not required to bring up the entire record in order to demonstrate that the trial court was right in overruling those assigned grounds. The defendant in error may bring up such record as is necessary for his purposes.

This brings us to the main question to be decided in the case, namely, whether the trial court erred in setting aside the verdict because the plaintiff was not present at the trial to submit to a physical examination by doctors of the defendant's selection.

No case has been discovered which holds that the presence of either the plaintiff or the defendant in an action at law is essential to the trial of the case. The contrary seems to be true and the holdings are to the effect that the presence of a party, either plaintiff or defendant, is to be placed upon the same basis as is the presence of a material witness. *Boardman* v. *Taylor*, 66 Ga. 638. The fact seems to be that it takes a stronger showing to procure the continuance of a case on account of the absence of either the plaintiff or the defendant than it does to procure a continuance for the absence of a material witness. *Gates* v. *Hamilton and Dishon*, 12 Iowa 50; *Goodwin* v. *American Nat. Bank*, (Tex. Civ. App.) 236 S. W. 780. At common law neither the plaintiff nor the defendant, having an interest in the outcome, could testify in an action of this sort. Here there was no subpoena issued by the defendant for the plaintiff. The plaintiff had disappeared and was not to be found some time before the day of trial, and the defendant asserts that it was not necessary for it to do a thing that would plainly have been useless by issuing a subpoena to require the presence of the plaintiff as a witness. However, the testimony that the defendant states it wished to adduce from the plaintiff as a witness, touches only the

question of his injuries, and, in the absence of affirmative testimony on that subject from the plaintiff, (the court instructed the jury to the effect that the absence of the plaintiff and of the plaintiff's wife was to be taken as a circumstance adverse to plaintiff on the question of his injuries), we think falls within the principles governing defendant's right to a physical examination. The question of whether such right exists in this state has never been passed upon, but has been expressly reserved from decision in at least two cases. *Perkins* v. *Traction Co.*, 81 W. Va. 781, 95 S. E. 797, and *Quinn* v. *Flesher*, 85 W. Va. 451, 102 S. E. 300. In the latter named case, it was held that it was not error for the trial court to refuse defendant's motion that they be permitted during the trial to take a radiograph of plaintiff's injuries, even where the plaintiff had expressed her willingness to have it done. In *Curfman* v. *Monongahela West Penn Public Service Company*, 113 W. Va. 85, 166 S. E. 848, this Court held that it was not error to refuse defendant's request for a physical examination and x-ray photographs, made immediately preceding the trial, upon the ground that such examination and photographs would be merely cumulative. There is no West Virginia case holding that it is error to refuse to permit a physical examination of plaintiff on motion of defendant. In *Union Pacific Railway Company* v. *Botsford*, 141 U. S. 250, 11 S. Ct. 1000, 35 L. Ed. 734, the Supreme Court of the United States held that no power exists in a court to require the plaintiff to submit to a physical examination at the motion of the defendant. The opinion reviews the common law history of the power of the courts with respect to this question, and bases its conclusion upon that background. A dissenting opinion filed by Mr. Justice Brewer, in which Mr. Justice Brown concurred, expresses the view that the power to require a physical examination is inherent in the courts, and apparently bases that conclusion upon the same common law history as that used in the majority opinion to justify the conclusion therein reached. Perhaps the most careful review of the question that has been made is that of the Supreme Court of Tennessee in the case of *Williams* v. *Chattanooga Iron Works*, 131 Tenn. 683, 176 S. W. 1031, Ann. Cas., 1916B, 101,

where the sound conclusions of that court, quoted at length because of the reasoning upon which they are based, are stated as follows:

"These excerpts seem to indicate an ancient practice of having a personal examination of an injured plaintiff, generally by the court, sometimes by the court and jury, generally without the aid of medical men, but sometimes with their aid. We here find what seems to us the germ of the present practice. It has been developed and extended in modern times like other law principles to meet the needs of the business transacted in modern courts.

"In the cases cited which recognize the doctrine it is applied with great restraint, and with a careful attention to the rights of the plaintiff. He must first be asked to submit to an examination, and the court can be applied to only after his failure to consent. The application to the court must be made before the trial and so as not to create unnecessary delay. The examination cannot be ordered upon mere motion. The application should be supported by affidavit setting forth pertinent facts and reasons. The examination cannot be had merely to obtain cumulative evidence. It must be made to appear that it is necessary in order that justice may be done to the defendant. It should affirmatively appear that the examination can be made without danger to the plaintiff, or any serious pain. Proper inquiries on these heads should be made by the trial judge before ordering the examination, and his conclusions should be written down in the order. Being thus prepared for the proper exercise of his discretion, he may act, and either grant or disallow the application. His decision is subject to review on appellate proceedings, and the revising court, being furnished with the grounds of his action, preserved in the record or by bill of exceptions, together with his conclusions and reasons therefor, will be able likewise to exercise an intelligent discretion, either in affirmance or reversal of the trial court's action.

"If the application be granted, the plaintiff cannot be required to submit his body to the examination of a physician or surgeon selected by the defendant. The physician or surgeon must be selected by the trial judge, and he must be one of competent skill, and

indifferent between the parties. And while the expense must be borne in the first instance by the defendant making the application, the fee should be fixed in advance, and paid into court, to be paid to the expert when he files his report. The expert should file a report, stating in detail the result of his examination. This report should be open to the inspection of counsel on both sides of the controversy, but not for use as evidence, except in cross-examination of such surgeon or physician, in case he should be introduced as a witness at the trial by either of the parties.

"In the conduct of the examination, the privacy of the plaintiff's person must be preserved as far as possible. In the case of a woman, there should be female physicians, if they are accessible. If application be made therefor the plaintiff's own physician should be permitted to be present at the examination.

"The plaintiff cannot be compelled to submit to the examination by proceedings in contempt. He is offered the alternative of a reasonable compliance with the duty of exhibiting his injuries to proper persons selected by the court, or of having his suit dismissed. He is at liberty to refuse, and on dismissal of his suit for such refusal may, as was done in the present case, test the correctness of the action of the trial judge by appeal, writ of error, or other appropriate appellate proceedings."

In the case of *Johnston* v. *Southern Pacific Company,* 150 Cal. 535, 89 P. 348, 11 Ann. Cas. 841, the Supreme Court of California reviewed the state of the law generally throughout this country on the question under consideration, and reached the conclusion that the power to require the plaintiff to submit to a physical examination by experts nominated by the defendant exists, but that case turns simply upon the question of the court's power and not upon the method of selecting the experts. In *Smith* v. *City of Spokane,* 16 Wash. 403, 47 P. 888, the Supreme Court of Washington held that because the demand was to have the physical examination made by physicians of the selection of the side making the demand, that fact was sufficient reason for the court's refusing it. To the same effect is *Keller & Brady Company* v. *Berry* (Ky.), 121 S. W. 1009. Without attempting to review the large number of decided cases that deal with the question and which are

rendered easily accessible by annotations contained in 1 Ann. Cas. 266; 11 Ann. Cas. 844; Ann. Cas. 1917D, 351; 14 L.R.A. 466; 23 L.R.A. (N.S.) 463; 41 L.R.A. (N.S.) 1071; L.R.A. 1915E, 936; 51 A.L.R. 183, we simply state our conclusion that if the right to require the plaintiff to submit to a physical examination on motion of the defendant in a personal injury case exists in this state, it is not the right to have the examination made by physicians of the defendant's selection, but by physicians to be appointed by the court. Here, there was in fact no separate formal demand made before trial that the plaintiff be required to submit to a physical examination. But because it seems to have been clearly understood some time before the trial that the defendant desired that right, and because the matter was distinctly referred to in the written motion for a continuance and in the affidavit supporting that motion, both filed on the day of trial, under the peculiar circumstances of this case, we do not think that the decision should rest upon the insufficiency of the demand as to either form or time. Even then, the demand was made to have the plaintiff submit to a physical examination at the hands of physicians of the defendant's selection. Furthermore, the demand was made after the plaintiff had disappeared and exhaustive efforts had been made to locate him without success, and therefore at a time when it was impossible to comply with the demand. The evidence shows that counsel for the plaintiff, until the time of plaintiff's actual disappearance, expressed every willingness to have him undergo a physical examination at the hands of doctors to be selected by the defendant. During this period of time, there was apparently no effort on the part of the defendant to have the physical examination made. It was only after the plaintiff had disappeared that the matter of a physical examination seems to have become an acute question, and it was not until the very day of trial that the formal motion for a continuance based upon demand for the physical examination was made to the court. Even in those jurisdictions where it is held that the right exists in the court to require the plaintiff to submit to a physical examination, it is also held that the exercise of the power is matter of sound discretion, and that the defendant has no absolute right to

insist upon it. Under the circumstances of this case, we are of the opinion that there was no abuse of discretion and no error in the action of the trial court refusing to continue the case on the ground of the absence of the plaintiff, and the inability for either the court or plaintiff's counsel to submit the plaintiff to a physical examination at the hands of doctors to be selected by the defendant. The court could not have granted the plaintiff's request in the form in which it was submitted in any event and, no matter what form the demand might take, there was no proof in the record tending to show that the plaintiff's presence could be procured at any later term or at any time to which the case might have been continued.

The only remaining question to be disposed of is whether or not the court erred in refusing a continuance to the defendant on the ground of the absence of a material witness, one Reider, who was riding with the defendant in his automobile at the time of the collision. There is no evidence in the record to the effect that this man at the time of trial was within the jurisdiction of the court or that he could be procured as a witness at any future time. He was a "hitchhiker" who resided outside the state. The evidence taken before the court on the motion to continue the case shows that the defendant used every effort to locate him without success, except that these efforts disclosed the fact that he is a non-resident of the State of West Virginia. Furthermore, the defendant stated that he could testify to every material fact that the desired absent witness could testify to. Under these circumstances, we do not believe that the court erred in refusing a continuance on this ground.

We see no abuse of discretion nor reversible error in the action of the trial court in overruling the motion of the defendant for a continuance of the case, under all the circumstances here presented, and, that being so, there was no substantial ground upon which the verdict should have been set aside. We are of opinion to reverse the orders of the circuit and common pleas courts, to reinstate the verdict and to render judgment thereon in this court.

*Reversed and rendered.*