# CASES DETERMINED

IN THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA.

AT A SPECIAL TERM THEREOF, HELD AT WHEELING,
IN THE COUNTY OF OHIO, COMMENCING ON
THE SIXTH DAY OF MARCH, 1878,
AND ENDING ON THE SEVENTH
DAY OF MAY, 1878.

LEWIS AND FRAZIER *v.* CHILDERS, *et al.*

Decided April 27, 1878.

1878
Special Term.

1. Verdicts of juries are to be favorably construed; and if the point in issue is substantially decided by the verdict, it is the duty of the court to mould it into form.

2. When the meaning of the jury can be clearly collected from the verdict, it ought not to be set aside for irregularity or want of form in its wording.

3. In ejectment when the meaning substantially of. the jury cannot be satisfactorily collected from their verdict, upon material matters involved in the issue, the verdict is irregular

1878
Special Term.

Lewis and Fra-
zior
v.
Childers *et al.*

and too vague, and is insufficient, and should be set aside and a new trial awarded.

4. In ejectment the jury found a verdict in these words, viz: "We the jury, find for the defendants, and fix the line, as shown on the Sinnett map, from C. to D." This verdict held, by the Appellate Court, under the circumstances and facts stated in its opinion, to be so irregular and vague as to matters in issue, as that the same should be set aside, and a new trial awarded.

Writ of error to a judgment of the circuit court of Kanawha county, rendered on the 29th day of June, 1876, in an action of ejectment, in which William A. Lewis and William Frazier, trustees, were plaintiffs, and Felix Childers and others were defendants, granted on the petition of said Lewis and Frazier.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the judgment complained of.

The facts sufficiently appear in the opinion of the Court.

*Miller and Brown,* counsel for plaintiffs in error, cited the following authorities:

1 Munf. 162 ; 1 H. & M. 177 ; Tucker's Comm. Vol. 2, p. 173 ; 6 Pet. 205 ; 6 Munf. 25 ; 11 Gratt. 78; 5 Leigh 98; 6 Rand. 182.

*J. H. & J. T. Brown,* counsel for defendants in error relied on the following authorities :

5 Gratt. 110; 1 Greenl. Ev. 47, 24, 25, 26, 211 ; 11 Gratt. 605 ; 8 W. Va. 412 ; 2 Bibb 178 ; Id. 429 ; 1 Bibb 248, 257 ; Litt. Sel. Cas. 367 ; 4 Bibb 194 ; 2 Tuck. 176 ; 1 Gil. 118 ; 4 Bur. 2487 ; 5 T. R. 107 ; 8 Bos. (N. Y.) 528 ; 7 T. R. 334 ; 5 Mon. 538 ; Code of W. Va., p. 521, sec. 25 ; 2 Saund. 308 ; 6 Rand. 182 ; Id. 410 ; Hobart 53 ; Co. Litt. 227 a ; 1 Lev. 66 ; 6 Rand 118 ; 2 Gratt. 193; 14 Gratt. 287 ; 2 Bibb 150; Id. 236 ; 2

Wheat. 221; Hemp. 184; 1 W. Va. 1; 2 Wheat. 306;  14 How. 240; 3 W. Va. 37; Humph. 3; 4 B. Mon. 5; 2 W. Va. 427; 20 Wend. 635; 42 Barb. 585; Bul. N. P. 110; 11 Gratt. 84.

1878
Special Term.
——————
Lewis and Fra-
zier
v.
Childers et al.

HAYMOND, JUDGE, delivered the opinion of the Court:

In February, 1872, the plaintiffs, by their attorney, filed their declaration in ejectment in the clerk's office of Kanawha county, against Felix Childers, John Means, Allen Dunlap, George Merville, trustee, Samuel Blish and James Brogan. The declaration contains three counts. The first count is in the name of Wm. A. Lewis and Wm. Frazier, trustees of Susan M. Frazier and her children, and is for 480 acres of land, conveyed by John Lewis and Sarah E., his wife, to James A. Lewis, by deed dated the 5th day of December, 1849, and also for another tract, containing 1,200 acres of land, conveyed by John Lewis and Sarah E., his wife, to James A. Lewis by deed made the 18th day of June, 1849. Both of said tracts are alleged to be in Kanawha county, and are described in the count. The second count is in the name of William Frazier, trustee, &c., and appears to be for the same two tracts of land mentioned in the first count. The third count is in the name of the "said plaintiffs," and appears to be for the same tracts of land as the said first and second counts. Each count alleges, that the plaintiffs therein were possessed in fee of the lands therein mentioned and demanded.

At a Circuit Court held for Kanawha county on the 1st day of April, 1872, (the record states) "came the parties by their attorneys, and thereupon the defendants demur generally to the plaintiffs' declaration, in which demurrer the plaintiffs join. And the defendants for plea in this behalf plead not guilty, and put themselves upon the country; and the plaintiffs do the like." It also appears, that by consent the surveyor of the county

was ordered to make a survey of the lands in controversy, &c.

It further appears, that on the 11th day of June, 1873, on motion of plaintiffs' counsel, the following persons were made additional parties defendant to this suit, viz: Parker Means, William Means, James R. Davis, Benjamin C. Davis, Thomas A. Davis, John Ballard and Jane, his wife, Frank Dunlap and Sarah, his wife, Elijah Midkiff and Minerva, his wife, Leonora Davis, Harriet Davis, Lewis Baise and —— Davis, widow of Thomas Davis, deceased. And the court ordered, that an amended declaration, with the above additional parties defendant, "may be filed in this suit, and the same is accordingly filed," and the cause remanded to rules for further proceedings.

The amended declaration and notice with the return of the sheriff thereon appear to have been filed at August rules. The first count of the amended declaration is in the name of Wm. A. Lewis, and William Frazier, trustees of Susan M. Frazier and her children, against Felix Childers, John Means, Allen Dunlap, George Merrell, Samuel Blish, and James Brogan, Parker Means, Wm. Means, James R. Davis, Benjamin C. Davis, Thomas A. Davis, John Ballard and Jane, his wife, Frank Dunlap and Sarah, his wife, Elijah Midkiff and Minerva, his wife, Leonora Davis, Harriet Davis, and —— Davis, widow of Thomas Davis, deceased. This count appears to be for the same lands mentioned in the first count of the original declaration. The second count is in the name of the same plaintiffs, as the second count in the original declaration, and appears to be for the same lands. The third count is in the name of "the said plaintiffs," and is for the same lands as the third count in the original declaration. In fact the amended declaration seems to be the same in all respects with the original except as to the additional parties.

It appears, that at the September rules, 1873, Parker

1878
Special Term.

Lewis and Frazier
v.
Childers et al.

Means, B. C. Davis, J. W. Davis, Thomas A. Davis, Wm. M. Means, James F. Dunlap and Elijah Midkiff separately pleaded not guilty to the action. On the 26th day of November, 1873, the court ordered Sylvester Chapman to make a survey of the lands, &c. It appears, that on the 10th day of December, 1874, the defendants, Samuel Blish, George Merrell, and James Brogan appeared in court by their attorneys, "and pleaded not guilty of unlawfully withholding the premises in the declaration described, and of this they put themselves upon the country; and the plaintiffs did likewise; and the cause was continued until the next term as to them.

And on the same day, it also appears, the defendants Felix Childers, Parker Means, J. R. Davis, John Means, Benjamin C. Davis, Thomas A. Davis, John Ballard, and Jane his wife, Frank Dunlap, and Sarah his wife, Elijah Midkiff, and Minerva his wife, LeonoraDavis, Harriet Davis, Sarah Davis and Allen Dunlap, by their attorneys, pleaded, that they were not guilty of unlawfully withholding the premises claimed by the plaintiffs in their declaration; and of this put themselves upon the country. And thereupon on the same day a jury was duly selected, impaneled and sworn, the truth to speak upon the issue joined, and having heard part of the evidence were adjourned until the next day. On the 11th of December, 1874, the jury were discharged from rendering a verdict, and the case continued, and the court adjourned for reasons stated in the order of the court.

Afterwards on the 2d day of June, 1875, came as well the plaintiffs, by their attorneys, as the defendants Felix Childers, Parker Means, Wm. Means, J. R. Davis, John Means, Benjamin C. Davis, Thomas A. Davis, John Ballard, and Jane his wife, Frank Dunlap, and Sarah his wife, Elijah Midkiff, and Minerva his wife, Leonora Davis, Harriet Davis, Sarah Davis and Allen Dunlap, by their attorney; and thereupon a jury came, who being selected by lot, impaneled and sworn the truth to

speak upon the issue joined between the plaintiffs and the said defendants, and not having time to hear the evidence were adjourned over until the next morning at 9 o'clock.

On the 3d day of June, 1875, the court again met, and the jury was again adjourned over; and they were adjourned over from day to day until the 7th day of June, 1875, at which time the jury found and returned to the court their verdict in the case, which is in these words, viz: "We, the jury, find for the defendants, and fix the line as shown on the Sinnett map from C. to D." And on the plaintiffs' motion, the judgment of the court on the verdict was suspended until a future day of the term.

On the 11th day of June, 1875, by consent of the plaintiffs and the defendants, Samuel Blish, George Merrell and James Brogan, an agreement as to a line of partition, &c., was made, and entered of record in the case, and the case dismissed as to said defendants, Samuel Blish, George Merrell and James Brogan. But said agreement and dismissal had nothing to do with the true controversy in fact between the plaintiffs and the defendants.

On the 18th day of June it is recited in the order of the court, made in the cause on that day, that "the plaintiffs having heretofore," moved the court to arrest judgment on the verdict of the jury, moved the court to set aside the verdict of the jury on account of the vagueness and uncertainty thereof, and award a new trial.

Afterwards, to-wit, at a court held on the 29th day of June, 1876, "came the parties by their attorneys, and thereupon the motion of the plaintiffs in arrest of judgment, and to set aside the verdict and grant a new trial, having been fully argued and maturely considered, the court is of opinion, that the said verdict is in form and effect a general verdict for the defendants, and that the addition thereto of the words "and fix the line as shown

on the Sinnett map from C. to D.," is mere surplusage. It is therefore considered by the Court, that the said motion be overruled, and that the plaintiffs take nothing by their bill, but for their false clamor be in mercy, &c., and that the defendants go thereof without a day, and recover against the plaintiffs their costs, by them about their defense in this behalf expended, including $15.00, as allowed by law.

It further appears, that on the 30th day of June, 1876, the plaintiffs, by their attorney, tendered a bill of exceptions to opinions of the court given in the cause, which was duly signed, sealed and enrolled and made a part of the record. This bill of exceptions does not purport to state all the evidence or facts before the jury; but it does state a large amount of evidence written and oral, that was before the jury. The bill of exceptions is in fact and effect an exception to the opinion of the court, in refusing to set aside said verdict and award a new trial, because of the vagueness and uncertainty of the verdict of the jury. If the bill of exceptions was intended, to have this Court review the evidence and facts given and proven before the jury, and determine, whether the verdict, if otherwise sufficient, was not authorized by the evidence, the record should show, that all the evidence and facts, given before the jury, were stated or contained in the bill of exceptions, which, as before stated, is not the case.

But there is sufficient in the bill of exceptions, to enable us to see, that the defendants, or some of them, claimed the whole of the tract of land laid down in Sinnett's map as B. E. D. C. B., and that they offered evidence before the jury tending to sustain that claim; while the plaintiffs claimed the whole of said tract as embraced by said map, and offered evidence before the jury to sustain that claim. Sinnett's map, which it is evident was referred to by the jury in their verdict, as well as his report, is by the plaintiffs' bill of exceptions made a

1878
Special Term.

Lewis and Fra-
zier
v.
Childers et al.

part of the record.   From this map it is manifest, that the straight line from C. to D., as laid down on the map, if that be the division line intended to be fixed by the jury between the plaintiffs and defendants, of the said tract B. E. D. C. B., as laid down on said Sinnett's map, then the purpose and intent of the jury was manifestly, to find for the defendants, of said tract B. E. D. C. B. so much of the same, as is embraced within the lines B. E. D. C. B., only leaving so much of the four hundred and eighty acre tract, demanded by the plaintiffs, between the crooked line running from C. to D. by the ridge (by said Sinnett's map) with the line of Shrewsbury and said straight line running from C. to D. to the plaintiffs, as their land.

But if by the line C. D. the jury meant the crooked line running from C. to D. by the ridge with Shrewsbury's line, as laid down on said map, then the jury clearly meant to find, that the plaintiffs did not have right to the possession of the said tract B. E. D. C. B., or any part thereof demanded, and the finding of the jury would amount to a finding by them, that the plaintiffs did not have right to the possession of said tract B. E. D. C. B., demanded by the plaintiffs, or any part thereof.   However, owing to the defect of the verdict of the jury, in not specifying which line they meant in said Sinnett's map by the line C. D., whether the straight line or the crooked line by the ridge, it is impossible to determine, whether the jury meant to find, that the plaintiffs had no right to the possession of the whole of the premises, or only a part thereof.

The plaintiffs demanded from the defendants the whole of said tract B. E. D. C. B., running with the crooked line by the ridge from C. to D. by Sinnett's map; and the defendants, as shown by the record, claimed the whole of the tract demanded by the plaintiffs.   The tract B. E. D. C. B., adopting the straight line from C. to D. instead of the crooked line from C. to D. by the

ridge, does not embrace the whole of the land claimed by the plaintiffs, as is manifest. If the jury had by their verdict simply found for the defendants, and there stopped, then the verdict would clearly have been a general verdict in favor of the defendants, as to the matter in issue. But the jury did not content themselves with simply finding "we the jury, find for the defendants," but they proceeded further, and added thereto, and fixed the line, as shown on the Sinnett map, from C. to D. *Prima facie*, it should be taken, perhaps, that by the line C. D. the jury meant the straight line C. D., as laid down on Sinnett's map; and if that view be taken, it would seem to have been the intention of the jury, by their verdict, to have found, that the plaintiffs had no right to the possession of a part of the land demanded, and had right to the possession of another part thereof, but which part it cannot be ascertained with any reasonable certainty from the verdict of the jury.

Under the circumstances of the case, and from the language of the jury employed in their verdict, I do not feel satisfied, that the jury in fact found or intended to find a general verdict for the defendants in the case, as against the plaintiffs. Upon the contrary thereof *prima facie* it would seem, whatever may have been their true intention, that the jury, instead of finding a general verdict for the defendants, meant to find a special verdict, whereby they meant to decide, that the plaintiffs had no right to the possession of the whole of said tract B. E. D. C. B., as laid down on said Sinnett map, but had a right to the possession of a part thereof, but as to which part the verdict is so vague and uncertain, that it cannot be determined with any reasonable certainty.

Verdicts of juries are to be favorably construed; and Syllabus 1 if the point in issue is substantially decided by the verdict, it is the duty of the court to mould it into form. *Picket* v. *Picket*, 2 Bibb 178.

Where the meaning of the jury can be clearly collect- Syllabus 2

ed from the verdict, it ought not to be set aside for irregularity or want of form in its wording, *Denny* v. *Booker,* 2 Bibb 427. The jury had the right to find for the plaintiffs a part of the said land, and against them as to the residue. *Duncan McArthur* v. *Wesley S. Porter,* 6 Pet. 205. And the jury may find for the plaintiffs, or such of them, as appear to have right to the possession of the premises or any part thereof, and against such of the defendants, as were in possession thereof, or claimed title thereto, at the commencement of the action. Sec. 23, chap. 90, Code of this State of 1868 ; *Callis et al.* v. *Kemp et al.,* 11 Gratt. 78. And when the plaintiff appears to have no such right, the verdict as to such plaintiff shall be for the defendants. Sec. 24 of same Code.

From the authorities and on principle it seems to me, that where the meaning substantially of the jury cannot be satisfactorily collected from their verdict, upon material matter involved in the issue, the verdict is irregular and insufficient. It is very true, if a verdict finds matter out of the issue, it is void for so much. It is also true, that if a jury give a verdict of the whole issue, and of more, that which is more is surplusage and should not stay judgment. It is also true, that on the general issue it is perfectly well settled, that the jury can not in the case find, to any effectual purpose, any matter not within the issue, which they are charged to try. If they do, the court is bound to reject such finding as surplusage ; and if the verdict be otherwise sufficient to justify a judgment, then to give such judgment, as would be proper, if there had been no such finding of matter out of the issue. This rule is founded on the best of reasons. *Garrard* v. *Henry,* 6 Rand. 110.

Upon the whole it seems to me, that the circuit court erred in considering the words " and fix the line as shown on the Sinnett map from C. to D.," as employed in the verdict of the jury, as mere surplusage, and in determining, that the said verdict is in form and effect a general verdict for the defendants. Owing to the fact that

Syllabus 3

the action of ejectment in this State is no longer fictitious, and of the provisions contained in the 35th section of chapter 90 of the Code of this State of 1868, it seems to me, that a due regard for the administration of justice between the parties to this cause requires us to determine, that said verdict is too irregular and vague to justify the rendition of judgment thereon ; and that by reason of such irregularity and vagueness the circuit court erred in not setting aside the said verdict of the jury and awarding a new trial.   See as bearing on the effect of said 35th section of chapter 90 of the Code, *Borrows* v. *Kindred,* 4 Wall. 399; *Packett Company* v. *Sickles,* 5 Wall. 580 ; *Meyers* v. *Ford,* 9 W. Va. 184.

1878
Special Term.

Lewis and Frazier
v.
Childers *et al.*

Syllabus  4

I mention the fact, that it does not appear, that the defendants, as to whom trial was had, or any of them entered or made any disclaimer as to any part of the land demanded in the declaration.   Certainly it seems by their defense and evidence shown by the record, that the defendants on the trial claimed title and the right of possession in and to the whole of said tract B. E. D. C. B.

For the foregoing reasons the said judgment of the circuit court of the said county of Kanawha is erroneous, and must be reversed ; and the plaintiffs in error recover against the defendants in error their costs in this Court, about the prosecution of their writ of error in this case in this Court expended.

And this Court proceeding to render such judgment in this case, as the said circuit court should have rendered, it is considered, that the verdict of the jury rendered in this case be and the same is hereby set aside, and a new trial awarded in the case, the costs of the former trial to abide the event of the suit.

And the cause is remanded to said circuit court, for such further proceedings therein to be had, as are or may be according to law.

The other Judges concurred.

JUDGMENT REVERSED and cause remanded.