# CHARLESTON.

## C. F. LOWTHER *v*. OHIO VALLEY OIL & GAS CO.

### Submitted April 13, 1921.   Decided April 19, 1921.

1.  APPEAL AND ERROR—*Judgment on Instruction Stating Agreed Facts Binding Though One was Mistaken as to Verity of Facts.*

    An instruction given to the jury and stating facts agreed upon by the parties is binding and conclusive upon the parties so agreeing, and a verdict and judgment based thereon will not be disturbed by the appellate court, although the evidence tends to show that one of the parties to the agreed instruction was mistaken as to the verity of the facts agreed upon, where such instruction is given at the conclusion of the evidence without objection or exception, and no motion for continuance is made, nor evidence that the party was misled or taken by surprise submitted to the court upon a motion to set aside the verdict.   (p. 652).

2.  DETINUE—*Formal Demand Not Necessary Except to Convert Lawful Possession Into Unlawful Detention; Whether Demand Made Held for Jury.*

    It is not necessary in an action of detinue to make a formal demand for the delivery of property; but in order to convert a lawful possession into an unlawful detention a demand must be made, and from the date of the demand damages for the detention will begin to accrue.   Whether such demand was made is a question of fact for the jury.   (p. 653).

3.  STIPULATION—*Question as to Unlawful Detention of Property May be Eliminated by Agreement.*

    Where the parties in a suit in detinue have agreed in open court in writing that the defendant unlawfully detains the property which is the subject of the litigation, and by such agreement limits the issue to the time when such unlawful detention began, the question as to whether or not the deten-

tion was lawful is eliminated, and the verdict will not be disturbed because unlawful detention by the defendant was not clearly proven.    (p. 655).

4.  DETINUE—*Measure of Damages for Unlawful Detention is Value of Use of Property During Detention.*

The measure of damages for unlawful detention of property is ordinarily the value of the use of the property during the detention, and an instruction to this effect in a detinue suit is proper where there are no special circumstances or damages to change the ordinary rule.    (p. 655).

5.  NEW TRIAL—*Verdict Cannot be Impeached by Testimony of Jurors.*

The testimony of jurors will not be received to impeach their verdict.    (p. 656).

6.  DETINUE—*Verdict for Detention of Property Held Sufficient in Form.*

A verdict in an action of detinue which finds for the plaintiff, gives the items, and values of the items, of the property unlawfully detained by the defendant, and further finds as follows:  "And we assess two thousand two hundred and eighty eight ($2288.00) dollars for the detention of said property", is good, and is sufficient to show that the said sum of $2288.00 is the amount assessed as damages for the unlawful detention.    (p. 657).

7.  TRIAL—*Judge May Write Down Amounts Found by Jury in Words and May Correct Clerical Errors in so Doing.*

It is not error for the judge, upon receiving a verdict, to write therein the amount of damages in words, which the jury have found in figures, in the presence of the jury, and if in so doing he has made a clerical error, so that the words do not correspond with the figures and state the true amount, to then correct the clerical error in the presence of the jury, and with their assent, before they are discharged  (p. 657).

Error to Circuit Court, Ritchie County.

Detinue by C. F. Lowther against the Ohio Valley Oil & Gas Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Thos. J. Davis,* for plaintiff in error.
*Adams & Cooper,* for defendant in error.

LIVELY, JUDGE:

This writ of error brings for review a judgment of the circuit court of Ritchie County in which C. F. Lowther, in an action of detinue against the Ohio Valley Oil and Gas Co., was adjudged the possession of a No. 24 Star drilling machine and certain other personal property, or if the specific property could not be had, the alternative value thereof as ascertained by a jury, and $2288.00 damages for the detention thereof.

An agreed instruction was given the jury which is as follows: "The jury are instructed that by agreement between the plaintiff and the defendant, entered into at the bar of the court at the beginning of the trial of this case, it is admitted that the plaintiff was and is the owner of the property sued for and mentioned in the declaration and is entitled to a verdict therefor, or for the value thereof in case the same cannot be had, and the issues are confined to the question when the unlawful detention from the plaintiff of the property mentioned in the declaration or any part thereof began, the value of the property detained and the damages, if any, sustained by the plaintiff on account of such unlawful detention; and all questions as to the rent, if anything, to which the plaintiff may be entitled for the use of said property by the defendant prior to the beginning of the unlawful detention and the question of compensation to which the defendant may be entitled for repairs on said property are reserved for future adjudication in the action of assumpsit of the plaintiff against the defendant, now pending in this court.

"You are further instructed that the values to be found by you of the several articles detained, for the purpose of this case are as set forth in the prepared form of verdict agreed upon by the plaintiff and defendant, and submitted to you, but such values are not to be binding upon the parties or to affect their rights in said action of assumpsit."

In the progress of the trial it appeared from the testimony of the plaintiff that the drilling machine and other equipment was on certain leases which had been transferred to the defendant by plaintiff, and the defendant then claimed that all

of the property on the leases at the time of the transfer was
sold to it by the plaintiff, and attempted to substantiate this
claim by the testimony of its president, Mr. Banta, that its
contract of purchase included all of the property of every
kind on the leases at the time of the purchase and transfer,
but not having the contract and not then being able to produce
it, the testimony concerning the contents of the contract was
not permitted to go to any further length. The defendant
claimed that it did not know that the property sued for was
on the leases at the time of the transfer, nor until the plaintiff
had so stated in the trial, and until that moment was not ad-
vised that it had any interest in or claim to the property in
litigation. However, it made no effort to obtain a continu-
ance on account of surprise, proceeded with the trial of the
case, and made no exception or objection to giving to the
jury the agreed instruction, which admitted that the plaintiff
was then the owner of the property sued for and entitled to a
verdict therefor. Generally a litigant who is surprised in a
trial must then protect his interests by non-suit or contin-
uance, or some other appropriate motion or proceeding. He
cannot take the chance of an adverse verdict, and, when such
a verdict is rendered, ask to have it set aside in order to cor-.
rect his mistake. *Frymier* v. *Railroad Co.* 76 W. Va. 96.
Moreover the motion to set aside the verdict was not predi-
cated on surprise or newly discovered evidence of defendant's
ownership of the property. Presumptively it had abandoned
this claim of ownership in the court below. Defendant's
third assignment of error to the effect that the trial court
should have set aside the verdict and granted a new trial be-
cause of its possible and undeveloped claim of ownership is
not well taken. It is asserted for the first time in this court.
*Henderson* v. *Hazlett,* 75 W. Va. 255.

· The agreed instruction confined the issues to the date when
the unlawful detention of the property by the defendant
began, the value of the property (which was also agreed upon
and given to the jury as agreed values) and the damages, if
any, sustained by the plaintiff on account of such unlawful
detention. It would serve no purpose to consider the as-
signments of error upon matters which have been eliminated

by this agreed instruction.  Facts agreed upon by the parties in open court are binding and a decree or judgment based thereon will not be reversed.  *McCoy* v. *McCoy,* 74 W. Va. 64.  When did the unlawful detention begin?  After considerable negotiations for the delivery of the property to plaintiff it was agreed by the president of the defendant company with plaintiff, on February 19, 1918, that the property would be delivered forthwith to plaintiff, and that the adjustment of rent therefor and of the bill for repairs made on the machine would be made later.  Before this agreement was carried out defendant learned that the Bruce heirs claimed the ownership of the property, and learning that the plaintiff was not financially responsible, as it claimed, or fearing that he was not financially responsible, refused to carry out the agreement for delivery of the property made by its president, but stated in a letter to the plaintiff,. dated February 23, 1918, that as soon as he sent the company satisfactory evidence of his title, and would arrange for a settlement of the moneys expended by it in rebuilding the machine, it would then deliver the property.  On March 4, 1918, the Bruce heirs wrote to defendant, formally relinquishing all claim to the property, which letter defendant admitted it received on the 6th or 7th of March, 1918.  The amount of expenditures in rebuilding the machine claimed by the defendant was not furnished the plaintiff, although urged by him, and at one time, in order to get it out of the way he proposed to ''guess it off''.  A bailee's lien may be waived by agreement, or by implication arising from the bailee's acts.  Under the agreement of February 19, 1918, this item was to be left open for adjustment together with the rent for the machine then owing to the plaintiff; and by the agreed instruction these two items are eliminated from this case and reserved for settlement in an assumpsit suit pending for that purpose.  The plaintiff testified that after the Bruce heirs had relinquished all claim to the property, the defendant refused to deliver it to him or permit him to take any part of it.  There is no substantial controversy about these facts.  On this evidence the jury found that the unlawful detention began on April 1; 1918. We think this evidence warranted the jury in fixing this date,

and that a sufficient demand had been made for delivery of the property before that time. After the defendant notified plaintiff that it had no further use for the property, all of which it had been using in its business, and that it would pay no further rental thereon, all of the efforts of the plaintiff to get possession were implied demands, finally terminating in an agreement to deliver, which was afterwards repudiated. Under such circumstances no formal specific demand was necessary. Refusal had been sufficiently made to obviate the necessity therefor.

After April 1, 1918, there were frequent letters and telegrams between the parties in an effort to effect an adjustment out of court, and evidencing an intention on the part of the plaintiff to resort to the courts if the property was not promptly delivered.

There were two interrogatories propounded to the jury on motion of the plaintiff and objected to by defendant. First. "Did the Defendant unlawfully detain from the Plaintiff the property in controversy prior to the date of the institution of this suit?" Second. "If so, when did the unlawful detention begin?" The submission of these interrogatories is assigned as error. It will be again observed that one of the issues submitted by the agreed instruction was as to when the unlawful detention began. The fact that the detention was unlawful seems to have been agreed upon, and therefore it was unnecessary and improper, but we can see no harm in thus bringing that question to the special attention and finding of the jury. It was harmless error. The plaintiff claimed the detention was unlawful and began on the 19th day of February, 1918, and the defendant claimed it to have begun on May 9, 1918. It was very material for the jury to determine when the unlawful detention began in order to ascertain from what date the damages should accrue. Where interrogatories tend to ascertain and separate one or more facts controlling the judgment such interrogatories should be encouraged and promoted. *Peninsular* v. *Franklin Ins. Co.*, 35 W. Va. 666.

The following instruction given for the plaintiff is claimed as erroneous: "The jury are further instructed that the

measure of damages if any sustained by the Plaintiff is the value of the use or hire of the property detained from the time the unlawful detention began to the date of the verdict.'' This instruction correctly propounds the true measure of damages in an ordinary case of detention, and there are no special items of damages claimed here. *Wayne* v. *Cyphers,* 80 W. Va. 336; 18 C. J. p. 1024; 4 Sutherland on Damages (4th Ed.) 4317. But it is insisted that the instruction assumes, or would lead the jury to believe, that the detention of the property was unlawful, thus invading the province of the jury upon the determination of a material fact at issue. As heretofore shown, the parties had agreed that the detention was unlawful, and limited the issue to *when* the unlawful detention began.

The only other question left open by the agreed instruction was the amount of damages to be assessed. Complaint is made that the jury ascertained and fixed the damages at $4.00 per day from April 1, 1918 to the date of the verdict. The complaint is not based on the amount of the damages, but on the method by which the basis of $4.00 per day was fixed, as disclosed by the affidavits of two jurors. There was evidence on behalf of the plaintiff, which does not appear to have been controverted, that the use of the machine and equipment sued for was worth $12.00 per day, and hence the damages assessed, by whatever calculation or method arrived at by the jury, are much less than they might have been under the evidence. Had the sum been greater, we do not perceive how the verdict could have been disturbed under this evidence. After judgment on the verdict had been entered and the court had adjourned, but before completion of the bills of exception, two jurors made affidavits to the effect that some members of the jury were in favor of assessing $12.00 per day as damages, and others at less sums, while possibly four were not in favor of allowing any damages, but that in order to arrive at a verdict it was agreed that each juror should state the amount of damages per day he would assess, and the total divided by 11 (one of the jurors having been excused for cause) should be the verdict, which method was adopted, resulting in a composition verdict of $4.00 per day, and that

Sundays and holidays were excluded from the number of days between April 1, 1918 (which date they had agreed upon as the day when the unlawful detention began) and the day of the verdict. The judge of the lower court being of the opinion that he had no authority to consider the affidavits or then grant the defendant a new trial, gave the defendant the benefit of exceptions to his ruling in that regard and signed bill of exception No. 4, which incorporated the two affidavits. The refusal of the court to set aside the verdict and judgment because of the facts disclosed by these two affidavits is assigned as error. The judgment had been entered on the verdict, and the term of court had ended, and the defendant had given bond for suspension of the judgment while perfecting an appeal to this court. The court very properly refused to consider these affidavits at the time presented; and even if they had been presented before judgment and before the end of the term, they could not have been considered. A juror cannot impeach the verdict. *Pickens* v. *Boom Company,* 58 W. Va. 11; *Probst* v. *Braeunlich,* 24 W. Va. 356; *Reynolds* v. *Tompkins,* 23 W. Va. 229.

Bill of exceptions No. 3 complains of the action of the court in writing in the verdict when returned, in words, the amount of damages fixed by the verdict in figures. The jury had fixed the damages at $2288 (in figures) and the court in writing the amount in words made a mistake and wrote "two thousand two hundred and eight", but when his clerical mistake was discovered it was immediately corrected so as to correspond with the figures, before the jury left the court room, and to which correction the jury assented. We perceive no error in this action of the judge in correcting his clerical error. How has the defendant been prejudiced? The exception is extremely technical and without merit.

Exception is made to the form of the verdict because it does not state that the sum of $2288.00 was given as damages for the detention of the property. The verdict reads: "We the jury find for the plaintiff, and fix the value of the property sued for in this action as follows (then each item of property and value is given) And we assess two thousand two hundred and eighty-eight, $2288.00, dollars for the de-

tention of said property." It is clear and conclusive that the sum named for the detention was assessed as damages. It could have been given for no other purpose and under no other hypothesis and is responsive to the evidence and instructions. *Peters* v. *Johnson,* 50 W. Va. 644; *Lewis* v. *Childers,* 13 W. Va. 1.

Exception is made to the judgment entered as enlarging the verdict and not responsive thereto. The judgment is for the possession of the property described in the verdict and if any article cannot be had, then the value of such item of property as fixed and ascertained by the jury; and if none of the property can be had, then the aggregate value of the various items as so fixed, amounting to $5973.00. The fact that a correct addition is made of the value of the various items, thus arriving at the total value, is not enlarging the judgment to the detriment of the defendant. The judgment is entirely consistent with the verdict.

It is claimed that the court improperly overruled a demurrer to the declaration. We cannot find from the record that a demurrer thereto was interposed.

There are many assignments of error which we do not consider as important and others which are rendered unimportant by the agreed instruction.

We can find no error and the judgment is affirmed.

*Affirmed.*