E. F. KINCAID

*v.*

J. A. PATTERSON *et al.*

(No. 9823)

Submitted September 24, 1946. Decided October 15, 1946.

*Hogsett & St. Clair,* for plaintiff in error.

*Ernest E. Winters* and *Peyton & Winters,* for defendants in error.

Fox, Judge:

On May 12, 1943, E. F. Kincaid, leased to J. A. Patterson a room and premises known as 1037 Sixth Avenue, in the City of Huntington, at a monthly rental of twenty-five dollars, payable in advance on the fifteenth day of each month, later changed to the first day of each month. At the date of the lease, Patterson was in the armed services of the United States, and it was negotiated on his behalf by one W. O. Miller, who for a time managed the business conducted on the leased premises under some arrangement as to a division of profits. Later Miller gave up his management, and was succeeded by one W. A. Shotwell. The business carried on by Miller and Shotwell for Patterson was, for a time, conducted as the "Patterson Nut Products Company", and later as "Patterson Food Products Company."

The lease contained this provision:

"Provided, always, that in the event Tenant shall fail to pay the rent or fail and refuse to keep and perform the conditions and covenants herein set forth, and such default shall continue for ten days, at the option of Landlord this lease and everything herein contained on the part of Landlord to be kept and performed shall cease, terminate and be at an end, and Landlord shall be entitled to have again and repossess said premises as of his former estate, and Tenant to be put out; that this remedy of forfeiture shall be deemed cumulative and in addition to all other remedies provided by law.

"And provided further that Landlord, upon default continuing, may, but shall not be bound to, re-enter the said premises and re-let the same for the residue of said term and Tenant put out, and the expense of such re-letting and the difference between the rent received and the rent herein specified shall be paid by Tenant upon demand."

The rent was paid with reasonable regularity until April 1, 1945, although there were eight occasions, during the nearly two-year period, following the date of the lease, when payments were from one to four days late, — that is, beyond the ten-day period mentioned in the proviso of the lease quoted above. During the year next prior to April 1, 1945, the tenant was one day late in paying his rent for July and November, 1944.

Under the lease contract, the obligation of the tenant was to pay the rent for the month of April, 1945, on the first day of that month. Payment for that month was not actually offered until the 1st day of May, 1945. According to the record, a check for the April rent was made out on April 3, 1945, and it is testified that the tenant held the check with the idea that the landlord would come to the leased premises and "pick up" the same, as, it is contended, he had done on former occasions. But the check was not delivered within the ten-day period aforesaid, was laid aside, and on May 1, 1945, with a check dated May 1, 1945, intended to pay the rent for the month of May, was mailed to Kincaid, and received by him on May 2. The next morning, Shotwell, who represented Patterson in the matter, met Kincaid and inquired of him if he had received the checks sent him, and the reply was: "Yes, you have violated your lease, and I am going to throw you out". This was followed by a letter from the landlord to the tenants, dated May 4, 1945, with which the checks aforesaid were returned, and the Products Company and Shotwell were notified to vacate the leased premises not later than June 1, 1945. Some correspondence then ensued between attorneys, and no agreement being reached, the landlord instituted his action of unlawful detainer on June 22, 1945, in the Circuit Court of Cabell County, and service was had on Shotwell on the same date. Patterson, still being in the armed services, could not be served, and after process had twice been delivered to the Sheriff of Cabell County, and returned not served, an order of publication, as to him, was sued out and published. A jury trial of the

case was had in September, 1945, resulting in a verdict for the defendant. Plaintiff then moved that judgment be entered for plaintiff *non obstante verdicto,* and the alternative motion to set aside the verdict and grant plaintiff a new trial followed. On January 23, 1946, the motions so made were overruled, and a judgment entered that plaintiff take nothing by his action, and that he pay to the defendant his costs, to all of which plaintiff, at that time, duly excepted. On February 4, 1946, we granted this writ of error.

On September 19, 1946, defendant in error filed in this Court his motion to dismiss plaintiff's writ of error on the ground that since awarding the same, plaintiff, E. F. Kincaid, had conveyed the leased premises to Louis Kraft and Lilly Kraft, by deed dated July 17, 1946, recorded in the Cabell County Court Clerk's office on August 23, 1946; and asserted that, by reason of this conveyance, plaintiff was no longer entitled to recover herein, and that all questions involved herein are now moot, citing *Farley* v. *Thompson,* 101 W. Va. 92, 132 S. E. 204, to sustain his motion.

We are of the opinion that this motion should be denied. The question whether plaintiff was entitled to possession of the leased premises on the 1st day of June, 1945, or at the date of the institution of this action remains open, and from this question other rights may develop aside from the mere right of possession. There is the question of the amount of damages to which plaintiff may be entitled, should it be found that he was entitled to possession of the leased premises as of the date he made demand therefor. It is true that defendant has offered to pay all rent due to the date of said motion, and all interest and costs, based upon the rental of twenty-five dollars per month; and it is likewise true that plaintiff's original claim was for rent at twenty-five dollars per month. It is suggested by plaintiff, however, that he may have a right to amend his complaint in that respect, and to ask for damages based upon the reasonable rental value of the property during the period covered by this

litigation. These are not questions which we can decide upon this motion; but if the judgment under attack should be reversed and the action remanded to the circuit court for a new trial, they can be there determined. We think plaintiff's action should not be dismissed and that he is entitled to an adjudication of his rights in respect to the situation presented on this record. The case of *Farley* v. *Thompson, supra,* is not, in our opinion, here applicable. In that case the landlord before the expiration of the tenancy, sold and conveyed the leased premises, and then at the expiration of the tenancy sued to obtain a possession to which he was not entitled. That is not the case at bar. We therefore overrule the motion to dismiss the writ of error heretofore awarded herein.

The two alleged errors on the part of the trial court, assigned by plaintiff in error, involve the giving of defendant's instruction No. 4, and the refusal to give plaintiff's instruction No. 5. We will consider these assignments in their order.

The defendant offered four instructions, only one of which was given. That is instruction No. 4, which reads:

"The Court instructs the jury that even though you believe there was a failure to pay rent as and when it became due and payable, this failure to pay rent does not automatically terminate the lease in this case, and even though you believe from the evidence that payment was not tendered, under and by virtue of the terms of the lease herein the Lessor, Kincaid, by reason of such failure or refusal to pay such rent, had only an option to terminate the written lease, and under such lease he did not have to declare it null and void if he did not desire to do so. and the Court further instructs you that even though you believe from the evidence that the defendants were at fault in not paying the rent as and when due, and Kincaid did desire to take advantage of such failure or refusal and desired to terminate the lease, *you are further instructed that he was bound to elect to terminate the lease and give notice of such election to terminate to the defendants and make a demand for the payment of such rent upon the leased premises, and if Kincaid did not so elect*

*and did not so notify the defendants and demand such rent upon the leased premises, you will find for the defendants."* (Italics supplied.)

To the giving of this instruction, specific objections were made by the plaintiff at the time. The principal objection to this instruction goes to the italicized portion thereof. In substance and effect this instruction told the jury that plaintiff was required, if he elected to terminate the lease on account of failure to pay rent, to give notice of such election on the leased premises; and make demand for payment of such rent upon the leased premises; and that if he did not do so, there should be a finding for the defendants. The question raised is vital to a decision of this case.

Undoubtedly, the rule at common law was that, in order to effect a forfeiture of a lease on account of nonpayment of rent, there must be a demand for the rent on the premises. A clear statement of this requirement will be found in *Leonard* v. *Henderson,* 23 Gratt, 331, in which it is stated: "A formal demand of the exact rent due must have been made — made at a convenient time before sunset on the day and at the place stipulated by the parties; and, if no place was appointed, at the most notorious place on the premises. And this demand must have been actually made, though the possession was vacant, and no one was present to make the payment. These requisites being complied with, if the tenant failed to pay the rent in arrear, the forfeiture was complete: the lessor might re-enter at once, and bring his ejectment to obtain the actual posssession." See also *Bowyer* v. *Seymour,* 13 W. Va. 12, 24; *Johnston* v. *Hargrove,* 81 Va. 118. The apparent reason for this strict rule was that, forfeitures not being favored, they would not be enforced, even at law, except where there had been strict compliance with every requirement necessary to give the tenant an opportunity to avoid the forfeiture of his lease. In line with this principle there was the well recognized right to resort to a court of equity to avoid a forfeiture after it had occurred, which remedy, within limitations,

is recognized by our statute to this day.   Code, 37-6-20.

However, this strict rule has been gradually modified, as will appear from Code, 37-6-19, reading as follows:

"Any person who shall have the right of reentry into the lands by reason of any rent issuing thereout being in arrear, or by reason of the breach of any covenant or condition, may serve a declaration in ejectment on the tenant in possession, where there shall be such tenant, or, if the possession be vacant, by affixing the declaration upon the chief door of any messuage, or at any other conspicuous place on the premises, which service shall be in lieu of a demand and reentry; or may commence an action of unlawful detainer, and obtain service either in person or by publication, as in other such actions, which service shall be in lieu of a demand and reentry; and upon proof to the court, by affidavit in case of judgment by default, or upon proof on the trial that the rent claimed was due, and there was not sufficient property subject to distress upon the premises to satisfy the claim for rent due, or that the covenant or condition was broken before the service of the declaration in ejectment, or the commencement of the action of unlawful detainer, and that the plaintiff had power thereupon to reenter, he shall recover judgment, and have execution for such lands.   In case the time for reentering be specified in the instrument creating the rent, covenant or condition, the proceedings in ejectment or unlawful detainer shall not be begun until such time shall have elapsed."

The history of this change in the law is interesting. The substance of Code, 37-6-19, first appeared in the Virginia Code of 1849, and was carried into the Virginia Code of 1860.   It appears in our Code of 1868, as Section 16 of Chapter 93.   It reads: "Any person who shall have the right of reentry into lands by reason of any rent issuing thereout being in arrear, or by reason of the breach of any covenant or condition, may serve a declaration in ejectment on the tenant in possession, where there shall be such tenant, or, if the possession be vacant, by affixing the declaration upon the chief door of any messuage, or at any other conspicuous place on the

premises; which service shall be in lieu of a demand and re-entry; and upon proof to the court, by affidavit in case of judgment by default, or upon proof on the trial, that the rent claimed was due, and no sufficient distress was upon the premises, or that the covenant or condition was broken before the service of the declaration, and that the plaintiff had power thereupon to re-enter, he shall recover judgment, and have execution for such land."

This section was construed and applied in *Bowyer* v. *Seymour, supra,* in which it was held: "but if the landlord in such case does not re-enter in fact, he may bring his action of ejectment under the 16th section of chapter 93 of the Code; and when in such case his declaration in ejectment is served on the tenant in possession, when there shall be such tenant, or if the possession be vacant, by affixing the declaration upon the chief door of any messuage or any other conspicuous place on the premises, which service shall be in lieu of a demand and re-entry, and upon proof in the court, by affidavit in case of judgment by default, or upon proof on the trial, that the rent claimed was due and no sufficient distress was upon the premises, 'he shall recover and have execution for such land,' subject of course to the provisions of the 17th section &c., of said chapter 93 of the Code of this State of 1868." The 17th section therein referred to exactly corresponds to our Code, 37-6-20. In the *Bowyer* case the plaintiff brought his action of unlawful detainer, and inasmuch as Section 16 of Chapter 93 of the Code of 1868 did not authorize such an action, he was held to the strict requirements of the common law. This authorization was never incorporated in our Code until 1931, 37-6-19. As the law now is the rule applied to actions of ejectment, as laid down in the *Bowyer* case, applies with full force to actions of unlawful detainer.

We know of no law which specifically requires a landlord, when he elects to terminate a lease for violation of its terms, to give notice of such election on the premises. The lessee is, of course, entitled to notice of such election. In the case at bar, there is an express provision in the

lease that upon default the landlord may, but is not bound to reenter the premises, and from this we assume that it was the duty of the landlord to notify the tenant of his election to terminte the lease for failure to pay rent within the time stipulated therein. The landlord did elect to terminate the lease and so informed the tenant, both verbally and by letter. We do not think his election had to be made before there was an offer to pay rent for the month of April, though an acceptance of rent for that month would have operated as an election not to terminate the lease; but the proffered payment was refused, and the tenant was given prompt notice of the landlord's election to terminate the lease, and notified to vacate the property on a specified date.

The other alleged error in defendant's instruction No. 4 is that it told the jury that, before the plaintiff could recover, a demand for rent due should have been made upon the leased premises. We assume that this contemplates that such demand should have been made as required at common law, although the instruction does not expressly so state. Code, 37-6-19, expressly provides that such demand on the premises need not be made. It provides that service of a summons in ejectment or in unlawful detainer "* * * shall be in lieu of a demand and reentry." No demand of any character, either for rent or for the right to reenter, is required as the basis for either action. The summons itself is full and complete notice of such demand. That was held in the *Bowyer* case to be the law as to ejectment, and, under the amendment to the statute applies to unlawful detainer, and, strange to say, the question has not again arisen since that case was decided. We must assume that it is the accepted law in this jurisdiction. We are of the opinion that the giving of defendant's instruction No. 4 was such error as calls for a reversal of the judgment entered in the court below.

Plaintiff in error complains that the court erred in refusing his instruction No. 5 in the language following: "The Court instructs the jury that the lease contract

herein does not fix the place where the rent should be paid, and it therefore became and was the duty of the defendant to seek out the said E. F. Kincaid and make payment to him unless said E. F. Kincaid was out of the State." At common law, the rule was that where the place for payment of rent was not designated in a lease, demand therefor should be made on the leased premises. Aside from the fair implications of Code, 37-6-19, we cannot point out where this rule has been departed from; and yet the development of modern business has been such as to make such a rule unreasonable and inconvenient to everyone concerned. We think the rule should be that where the place of payment is not designated in the lease, it will be assumed that the duty to pay a money rent to the landlord, in the usual and ordinary course of business, rests upon the tenant, to the same extent as any other obligation to pay money. If the stipulated rent was in kind, such as a share in crops, the rule at common law would probably govern. If the tenant in this action had forwarded to the landlord his check, by mail or otherwise, within the time provided for payment under the lease, and the check accepted and paid, it would have amounted to payment of rent. Instruction No. 5, while it states a sound principle of law, in that the duty rests upon a tenant to take the initiative in the payment of a money rent, goes too far when it expressly says that it was the duty of the tenant to seek out the landlord. That expression, while probably not so intended, carries with it a requirement that is neither necessary, convenient, nor, in some instances, possible. Any method, whether personally, by messenger, or United States mail, would meet the requirement on the part of the tenant. On the whole, we are of the opinion that there was no error in refusing this instruction, in the exact form in which it was offered.

The other questions in this case, raised on the record, concern the interpretation to be given to Sections 19 and 23 of Article 6, Chapter 37 of the Code. With respect to Section 19 it is contended that there was a failure on the

part of plaintiff, in the trial below, to show that "there was not sufficient property subject to distress upon the premises to satisfy the claim for rent due." A reading of Section 19 will disclose that that fact must be proved to establish the right in a plaintiff in an action of unlawful detainer, under the statute, to recover the possession of property on the ground of nonpayment of rent. Section 23 provides that: "If any party having a right or claim to such lands shall, at any time before the trial in such action of ejectment or of unlawful detainer, pay or tender to the party entitled to such rent, or to his attorney in the cause, or pay into court, all the rent and arrears, with interest and costs, all further proceedings in the action shall cease. If the person claiming the land shall, upon bill filed as aforesaid, be relieved in equity, he shall hold the land as before the proceedings began, without a new lease or conveyance." We have already referred to Code, 37-6-20, which, in effect, recognizes the right of a tenant to have a forfeiture of his lease set aside, upon payment of all rent in arrear, with interest and costs, provided such proceeding to avoid the forefeiture is instituted within twelve months after the eviction has occurred. It is contended here that, not only was there no showing that there was not sufficient property on the leased premises to cover the rent involved, but that the tender of all rent due, with interest and costs, was made in open court, and refused by the plaintiff. These two contentions bring into the open the question of whether these statutory provisions can be applied to the circumstances of this case.

Waiving the question whether legal tender of rental was made, we must bear in mind that the lease under consideration specifically defined the rights of the parties thereunder. It is therein provided that should the tenant "* * * fail to pay the rent or fail and refuse to keep and perform the conditions and covenants herein set forth, and such default shall continue for ten days, at the option of Landlord this lease and everything herein contained on the part of Landlord to be kept and per-

formed shall cease, terminate and be at an end, and Landlord shall be entitled to have again and repossess said premises as of his former estate, and Tenant to be put out; that this remedy of forfeiture shall be deemed cumulative and in addition to all other remedies provided by law." Clearly, the parties contracted as to their rights under the lease. The tenant agreed that if he should not pay rent as and when due, the landlord should be entitled to repossess the premises as of his former estate, and that the tenant should be "put out". He further agreed that this remedy should be in addition to remedies provided by law. If the tenant had not made this agreement, and if he had failed or refused to pay the rent in violation of the covenant and agreement to pay rent at a time certain, the landlord would have been entitled to maintain his action of unlawful detainer under Code, 37-6-19, and would have been required to show that there was not sufficient property on the premises out of which he could recover his rent by distress; and, if, after he instituted his action, the tenant came in and tendered or paid into court the rent then due, with interest and costs, the proceeding would have ended. Code, 37-6-23. There is also the implied recognition contained in Code, 37-6-20, that by a suit in equity, instituted within one year after the date of eviction, a tenant may have a forfeiture of his lease set aside. We do not believe these provisions of the statute are available to a tenant who has, in express terms, and in writing, agreed to an additional remedy which the landlord may pursue. Freedom of contract still exists in this country, and, where legal and not against public policy, contracts are recognized and enforced. Here, we think the defendant made a written agreement which deprived him of the right to rely upon the statutory provisions aforesaid. The proposition is simply this: If plaintiff had been compelled to rely upon the statute for relief, he would have been bound by all of the provisions of that statute, whereas, in this case, under the lease agreement, he had other and additional remedies, and he had the right to pursue those remedies independently of the statute, and

entitled to resort to the common law remedy of ejectment or, under Code, 55-3-1, an action of unlawful detainer to make his agreement effective, the lease having relieved him of the common law requirement of demand for rent on the premises.

Another proposition stressed with some force is that plaintiff was not entitled to forfeit the lease in question, because he had, on numerous occasions, permitted the tenant to pay rent beyond the time specifically agreed upon. As we have stated above, the rent was paid with reasonable regularity, but there were several instances in which plaintiff accepted rent paid from one to four days after the expiration of the ten-day period provided for in the proviso in the lease quoted above. However, the payment of rent for April, 1945, was delayed some twenty-one days after the ten-day extension. This payment was due on April 1, 1945. The landlord did not have a right to reenter the premises until the expiration of ten days from that date. Twenty days elapsed from the expiration date to the time when the tenant actually attempted to pay the rent. There is a full discussion of this question in 32 Am. Jur., 747, cited by each of the parties, and which supports the contention of each. It is there stated: "A reasonable delay in declaring a forfeiture will not waive the right, but if the delay is unreasonable the forfeiture is deemed waived. At least, a landlord who by his words and conduct causes his tenant to believe that he does not intend to enforce a forfeiture may be estopped to avail himself of the forfeiture after his tenant has acted under such belief. Thus, if a lessor by his continuous course of conduct has led the lessee to believe that prompt payment will not be insisted upon, he will not be permitted without notice of his intention to do so to enforce a forfeiture for failure to make prompt payment, for the lessor should not be permitted to entrap the tenant. Mere leniency on the part of a lessor in exacting the prompt payment of rent, however, will not preclude him from enforcing the forfeiture for the subsequent nonpayment of rent, for, as has been well

said, if the leniency of a landlord in not insisting upon the strict payment of rent according to the terms of a lease would be a defense in an action to recover possession of the premises, then, indeed, the lot of a tenant might often be a hard one, since for their own protection landlords would insist upon strict compliance with the contract."

Suffice it to say that we do not think the conduct of the landlord in the case at bar was such as to estop him from electing to declare the lease forfeited by reason of the delay on the part of the tenant in paying the rent for the month of April, 1945.

We therefore reverse the judgment of the Circuit Court of Cabell County, set aside the verdict, and remand the action for a new trial.

*Judgment reversed; verdict set aside; new trial awarded.*